1 P.3d 816

STATE of Idaho, Plaintiff–Respondent,

v.

Richard SPOR, Defendant–Appellant.

No. 24786.

Court of Appeals of Idaho.

May 8, 2000.

George A. Southworth, Pocatello, for appellant.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

SCHWARTZMAN, Judge.

Richard Spor was charged with and found guilty of rape following his sexual relationship with a thirteen year-old girl in Power County, Idaho. Spor admitted to being a persistent violator. Spor was sentenced to thirty years imprisonment, with thirteen years fixed. He appeals.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

In January 1997, C.W. reported that in October of 1996, Spor, a forty-seven year-old man, had sexual intercourse with her in Lynnwood City, Washington and that she had become pregnant as a result. C.W. also stated that Spor had sexual intercourse with her when she was thirteen years old, around spring or early summer 1995, in American Falls, Idaho. Spor was subsequently charged with rape for the 1995 incident and with being a persistent violator.

Counsel for Spor filed a motion in limine challenging the issuance of a warrant of detention to obtain Spor's blood for DNA testing on the ground that the DNA evidence collected did not further the investigation of

318

an Idaho felony offense. Spor also argued that evidence of Spor's alleged intercourse with C.W. in Washington should not be admitted due to the risk of confusing the jury and undue prejudice. The district court limited the use of the DNA evidence and intercourse with the victim in Washington to impeachment of Spor if he chose to testify. The state filed a motion to reconsider, seeking to use the evidence in its case-in-chief. The district court granted the state's motion, ruling that the subsequent sex act in Washington—including the sweet-talk and grooming behavior that preceded the sex act—and the DNA evidence establishing that Spor was the father of C.W.'s child were relevant to both common scheme or design and credibility. Spor filed a motion to again reconsider the validity of the warrant of detention, which the district court denied.

At trial, C.W. testified that for a two or three-week period in 1995, while her mother was serving a jail sentence for driving on a suspended license, she stayed at Spor's sister's house where Spor also resided. C.W. stated that she and Spor became friends, going on walks, smoking cigarettes and playing Nintendo together. She said that Spor talked about sex, told her "how well-developed" she was, that he wanted to "screw" her and have a family with her. C.W. testified that she and Spor would go into his room to touch and kiss. After repeated requests for sex and threats that he would leave with his girlfriend unless she submitted, C.W. went to Spor's room where he had intercourse with her. C.W. said Spor's brother witnessed the incident. She testified that she did not report his conduct because he made her feel good and she did not want him to leave.

Shortly thereafter, C.W. and her mother moved to Blackfoot, Idaho. C.W. did not see Spor again until her mother took her to Washington in October of 1996. C.W. testified that while her mother was away from the house, Spor laid down with her on the floor and began kissing and hugging her. Spor then took her clothes off, had her undress him and had sexual intercourse with her. After C.W. discovered she was pregnant, she told her mother about the incident and the police were then notified.

The jury also heard testimony from two hospital workers who drew blood from Spor and had it tested by a laboratory. The DNA analyst who performed the testing confirmed the results indicating that Spor was the father of C.W.'s child. Spor's sister, his former girlfriend and his brother all testified in his defense.

The jury found Spor guilty of rape. Spor pled guilty to being a persistent violator. At sentencing, the district court imposed a fifty-year term, with twenty years fixed, later reduced to a term of thirty years, with thirteen years fixed. Spor appeals.

## II.

### ADMISSIBILITY OF C.W.'S TESTIMONY ABOUT INTERCOURSE WITH SPOR IN WASHINGTON AND DNA EVIDENCE

#### A. Standard Of Review

In determining whether evidence of a defendant's uncharged misconduct should be admitted under Idaho Rule of Evidence 404(b), the court must apply a two-tiered analysis. *State v. Moore,* 120 Idaho 743, 745, 819 P.2d 1143, 1145 (1991). First, the court must determine whether "the evidence is relevant to a material and disputed issue concerning the crime charged." *Id.* Second, the court must determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice to the defendant. I.R.E. 403. When considering a trial court's admission of I.R.E. 404(b) evidence, we exercise free review of the trial court's admissibility determination and review the determination that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice under the abuse of discretion standard. *State v. Dragoman,* 130 Idaho 537, 544–45, 944 P.2d 134, 141–42 (Ct.App.1997).

#### B. Discussion.

Spor argues that the trial court erred in admitting evidence of his sexual intercourse with C.W. in Washington and the DNA evidence indicating that he is the father of her child, conceived from that incident in Wash-

ington. He further alleges that the probative value of such evidence was substantially outweighed by the risk of unfair prejudice.

■ Idaho Rule of Evidence 404(b) provides that evidence of a defendant's other crimes, wrongs, or acts is not admissible to prove the defendant's character in order to show that the defendant acted in conformity therewith. However, such evidence may be admissible for other purposes, including proof of motive, opportunity, intent, preparation, identity, or general plan to exploit and sexually abuse an identifiable group of young female victims. *See, e.g., State v. LaBelle,* 126 Idaho 564, 567–68, 887 P.2d 1071, 1074–75 (1995). Additionally, the Idaho Supreme Court has also found that, due to the particular proof problems in sex crime cases involving minor victims, corroborating evidence is relevant. *See, e.g., State v. Tolman,* 121 Idaho 899, 904, 828 P.2d 1304, 1309 (1992); *Moore,* 120 Idaho at 745, 819 P.2d at 1145. By nature, such crimes usually have only two witnesses, the alleged victim and the defendant. Consequently, the determination of the case often rests upon establishing that the victim's testimony is more credible than that of the alleged perpetrator. *State v. Cross,* 132 Idaho 667, 670–71, 978 P.2d 227, 230–31 (1999) citing *Moore,* 120 Idaho at 746, 819 P.2d at 1146. When a defendant is charged with lewd conduct, rape or sexual abuse of a minor, evidence of similar acts of sexual misconduct between a defendant and the victim is admissible for corroboration of the victim's testimony. *Tolman,* 121 Idaho at 904–06, 828 P.2d at 1309–11.

The district court found that the act giving rise to the instant charge and the act of sexual misconduct in Washington were approximately one year apart, that each instance of sexual misconduct had taken place when C.W. was staying with friends when her mother was away and that both times Spor had engaged in similar patterns of grooming behavior—he sweet-talked her with flattery and made her feel needed to the point that she was willing to engage in sexual intercourse with him. Based upon these findings and guided by *Tolman* and *Moore,* the district court concluded that:

In addition to [C.W.] testifying to the alleged subsequent sex act between Defendant and herself is the DNA testimony proving that Defendant is the father of the child conceived during that act. This evidence adds credibility to [C.W.'s] testimony of the incident in Washington State. The credibility of that testimony allows [C.W.] to corroborate her account of the grooming patterns employed by the Defendant in the alleged common plan to engage [C.W.] in illegal sexual conduct.

. . .

The testimony in the present case is relevant regardless of any potential attenuation from remoteness in time for the same reasons. The testimony goes to the proof of Defendant's common scheme or plan to engage [C.W.] in sexual contact. The evidence potentially shows Defendant's lustful disposition towards [C.W.] and his grooming pattern in attempting to make [C.W.] feel wanted and needed. During the year between the alleged Idaho and Washington incidents, the Defendant had little or no opportunity to enact an alleged plan of sexual abuse because of the physical distance between the victim [C.W.] and the Defendant.

Because the testimony of [C.W.], in addition to the DNA evidence proving Defendant's paternity of [C.W.'s] child, is relevant to a determination of the parties' credibility and to show a common intent or plan on the part of the Defendant, the probative value of such evidence outweighs any potential unfair prejudice to Defendant.

■ Regarding the first prong of relevance, we hold that the court correctly concluded that the sexual misconduct in Washington and the DNA evidence establishing Spor's paternity of C.W.'s child conceived in that act, were relevant to proving both C.W.'s credibility, *Cross,* 132 Idaho at 670–71, 978 P.2d at 230–31, and Spor's lustful intent and common plan or scheme in each instance. *See, e.g., State v. Byington,* 132 Idaho 589, 977 P.2d 203 (1999) *affirming on review State v. Byington,* 132 Idaho 597, 606–07, 977 P.2d 211, 220–21 (Ct.App.1998); *LaBelle,* 126 Idaho at 567–68, 887 P.2d at 1074–

75; *State v. Phillips,* 123 Idaho 178, 181–82, 845 P.2d 1211, 1214–15 (1993).

 Regarding the I.R.E. 403 balancing test, that rule provides that a court may exclude otherwise relevant evidence where the risk of unfair prejudice *substantially* outweighs the probative value. The decision is within the discretion of the trial court. Relying on the reasoning in *Tolman* and *Moore,* the trial court implicitly found the probative value of C.W.'s testimony about the Washington incident and the DNA evidence was not *substantially* outweighed by the danger of unfair prejudice. By following the reasoning in *Tolman* and *Moore,* the trial court acted within the boundaries of its discretion and reached its decision through an exercise of reason. *Cross,* 132 Idaho at 671, 978 P.2d at 231.

 Accordingly, the district court did not err in ruling that both the evidence of the Washington sexual misconduct and the DNA evidence were admissible in the state's case in chief.

### III.

### VALIDITY OF THE WARRANT OF DE-TENTION USED TO OBTAIN SPOR'S BLOOD TO ESTABLISH HIS PATERNITY OF C.W.'S CHILD CONCEIVED IN WASHINGTON

According to the State's theory, a blood draw was needed to conduct a DNA test to determine whether Spor was in fact the father of C.W.'s child. If such were the case, it would corroborate C.W.'s allegations of grooming and intercourse in Power County, Idaho, a year earlier. Spor argues that the DNA evidence obtained through a warrant of detention should not have been admitted because the evidence was not obtained to further the state's investigation of a crime in the State of Idaho.

 The question presented is one of statutory construction over which we exercise free review. *State v. O'Neill,* 118 Idaho 244, 245, 796 P.2d 121, 122 (1990). The statute at issue, I.C. § 19–625,[1] authorizes a court to issue a warrant of detention compelling a suspect to permit the state to obtain evidence of identifying physical characteristics. In construing a statute, we must attempt to give to the plain meaning of the statute the effect intended by the legislature. *State v. Nunes,* 131 Idaho 408, 409, 958 P.2d 34, 35 (Ct.App.1998). No language in I.C. § 19–625 limits the issuance of a warrant of detention to obtaining evidence of physical characteristics *directly* related to the investigation of criminal activity in Idaho. The physical characteristic evidence, the DNA obtained from Spor's blood, was not directly related to his criminal conduct in Idaho, but was directly relevant to confirming the paternity of a child conceived in Washington during intercourse with a minor child who alleged that she had a sexual relationship with the defendant a year earlier in Idaho. Thus, the evidence was relevant to establishing the victim's credibility under our rules of evidence as well as a common plan to sexually exploit an Idaho victim. *Cross,* 132 Idaho at 670–71, 978 P.2d at 230–31.

---

1. Idaho Code § 19–625 states in pertinent part:

(1) A peace officer who is engaged, within the scope of his authority, in the investigation of an alleged criminal offense which is a felony may make written application upon oath or affirmation to a judge of any district court, or magistrates division thereof, for an order authorizing the temporary detention, for the purpose of obtaining evidence of identifying physical characteristics, of an identified or particularly described individual residing in or found in the jurisdiction over which the judicial officer presides. The order shall require the presence of the identified or particularly described individual at such time and place as the court shall direct for obtaining the identifying physical characteristic evidence. Such order may be issued by the judicial officer upon a showing under oath of all the following:

(A) Probable cause for belief that a specifically described criminal offense which is a felony has been committed.

(B) Reasonable grounds exist, which may or may not amount to probable cause, to believe that the identified or particularly described individual committed the criminal offense.

(C) Procurement of evidence of identifying physical characteristics from the identified or particularly described individual may contribute to the identification of the individual who committed such offense.

(D) Such evidence cannot otherwise be obtained by the investigating officer.

■ We hold that a warrant of detention may be issued by a judge where the requirements of I.C. § 19–625 are met and the physical evidence sought will materially aid in the investigation of an Idaho felony or appears reasonably calculated to lead to the discovery of information that will do so. *Cf.* I.C. § 37–2741A(a). A contrary ruling would unduly restrict the methods of investigating crimes, resulting in an inability to uncover evidence which would otherwise be admissible under our rules of evidence.

■ In this case, obtaining the DNA evidence was a material aid to the investigation of an Idaho felony and was reasonably calculated to lead to the discovery of admissible evidence in the prosecution of Spor, as corroborative of the victim's allegations of sexual misconduct in Idaho. Thus, we conclude that the district court did not err in admitting evidence of Spor's DNA obtained pursuant to I.C. § 19–625.

## IV.

### EXCESSIVE SENTENCE

■ Spor asserts that his sentence of thirty years with thirteen years fixed, including the enhancement for being a persistent violator, is excessive. Where a sentence is within the statutory limits, the appellant bears the burden of demonstrating that it is a clear abuse of discretion. *State v. Hedger,* 115 Idaho 598, 604, 768 P.2d 1331, 1337 (1989). A sentence may constitute a clear abuse of discretion if it is unreasonable upon the facts of the case. *State v. Broadhead,* 120 Idaho 141, 145, 814 P.2d 401, 405 (1991), *overruled on other grounds by State v. Brown,* 121 Idaho 385, 825 P.2d 482 (1992).

> [A] term of confinement is reasonable to the extent it appears necessary, at the time of sentencing, to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case. A sentence of confinement longer than necessary for these purposes is unreasonable.

> Such determinations cannot be made with precision. In deference to the discretionary authority vested in Idaho's trial courts, we will not substitute our view for that of a sentencing judge where reasonable minds might differ. An appellant must show that, under any reasonable view of the facts, his sentence was excessive in light of the foregoing criteria.

*Broadhead,* 120 Idaho at 145, 814 P.2d at 405, *quoting State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982).

■ Where an appellant asserts that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record and focus upon the nature of the offense and the character of the offender. *State v. Hernandez,* 121 Idaho 114, 118, 822 P.2d 1011, 1015 (Ct.App.1991); *State v. Reinke,* 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App.1982). With respect to sentences imposed under the Uniform Sentencing Act,

> the minimum period [of confinement] generally will be treated as the probable measure of confinement for the purpose of sentence review. By focusing on this period, we do not wholly disregard the aggregate length of the sentence, nor do we suggest that a prisoner will be *entitled* to parole when the minimum period has elapsed; but we do recognize that he will be *eligible* for parole at that time.

*State v. Sanchez,* 115 Idaho 776, 777, 769 P.2d 1148, 1149 (Ct.App.1989).

The maximum punishment for statutory rape is life imprisonment. I.C. §§ 18–6101, 6104. Spor's minimum period of confinement is thirteen years. Accordingly, Spor must demonstrate that this thirteen-year period was an abuse of the district court's discretion. Spor was forty-seven years old at the time of the second encounter.

■ The instant offense was Spor's fifth felony conviction. His criminal record includes delivery of a controlled substance, LSD, in 1971; possession of a controlled substance in 1975 for which he was sentenced to five years in prison; robbery and being a persistent violator in 1979 for which he received a twenty-year indeterminate sentence; and felony theft and burglary in 1997. Regarding the instant offense, Spor offered several partial denials including, if sex did occur

it was consensual between C.W., her mother and Spor. Although he claimed not to have used drugs since 1997, he admitted to having a drug problem.

The presentence investigator recommended incarceration, explaining that Spor never expressed remorse and consistently blamed the victim's mother, the prosecutor and the investigating officer for his legal predicament. During the presentence interview, Spor admitted to having sex with C.W. and then recanted, saying it "might" or "may" have happened and persisted in saying that "if any sex occurred, it was in Washington."

At sentencing, Spor professed his innocence. The court declined to consider probation due to the nature of this crime and the necessity to protect others from Spor. Thereafter, the court imposed a fifty-year sentence with thirty years fixed, subsequently reduced to thirty years with thirteen years fixed.

Given Spor's prior record as a persistent violator and the reprehensible nature of the instant offense, we conclude that the district court did not abuse its discretion by imposing a sentence of thirty years, with a minimum period of thirteen years confinement, for statutory rape.

## V.

### CONCLUSION

For the foregoing reasons, we affirm the district court's rulings on the admissibility of evidence of a subsequent sexual contact in Washington and DNA evidence, confirming Spor's paternity, obtained as a result of a blood draw pursuant to I.C. § 19–625. The conviction and sentence are likewise affirmed.

Chief Judge PERRY and Judge LANSING concur.

