**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 34945**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2010 Opinion No. 37** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: May 27, 2010** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **RICHARD DAVID POKORNEY,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Michael R. McLaughlin, District Judge.

Judgment of conviction for lewd conduct with a minor under sixteen, <u>vacated</u> and <u>remanded</u>.

Molly J. Huskey, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.  Justin M. Curtis argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.  Lori A. Fleming argued.

_____

GRATTON, Judge

Richard David Pokorney appeals his judgment of conviction on five counts of lewd conduct with a minor under sixteen.  Idaho Code § 18-1508.  He alleges the trial court erred in admitting evidence under Idaho Rule of Evidence 404(b).  For the reasons set forth below, we vacate the judgment of conviction and remand.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Pokorney and his wife, L.G., have five sons whose ages at the time of trial were:  J.G., age twenty-three; R.D.P., age seventeen; W.P., age twelve; R.P., age nine; and J.P., age five.  Stemming from the allegations of four of his five sons, Pokorney was charged with seven counts of lewd conduct with a minor under sixteen.  R.D.P. made no allegation of misconduct.  The

1

State's case included direct testimony of lewd conduct from J.G., W.P., and R.P. The youngest son, J.P., took the stand but did not testify to any misconduct.[1]

Prior to trial, the State notified Pokorney that it intended to present evidence of a prior bad act pursuant to I.R.E. 404(b). Pokorney had been convicted in Montana in 1984 of sexual conduct with a minor, involving B.W. as a victim. The evidence proposed by the State included a letter written by Pokorney, while he was in jail on charges of domestic violence, to his son R.D.P. In the letter, Pokorney denied the lewd conduct allegations in this case and, among other things, attempted to explain Pokorney's crime against B.W. The evidence proposed by the State also included testimony from B.W. Over objection from Pokorney, the district court allowed presentation of the evidence pursuant to Rule 404(b). In its case-in-chief, the State introduced portions of the letter and the testimony of B.W.

The jury convicted Pokorney of five counts of lewd conduct against J.G., W.P., and R.P., and the district court imposed unified sentences of life with thirty years determinate on each count to run concurrently. Pokorney appeals.

**II.**

**DISCUSSION**

Pokorney argues the letter and associated testimony of B.W. were irrelevant for any proper purpose under Rule 404(b) and, even if they were relevant, the probative value was substantially outweighed by the unfair prejudicial effect. Evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's criminal propensity. I.R.E. 404(b); *State v. Needs*, 99 Idaho 883, 892, 591 P.2d 130, 139 (1979); *State v. Winkler*, 112 Idaho 917, 919, 736 P.2d 1371, 1373 (Ct. App. 1987). However, such evidence may be admissible for a purpose other than that prohibited by Rule 404(b). *State v. Avila*, 137 Idaho 410, 412, 49 P.3d 1260, 1262 (Ct. App. 2002). In determining the admissibility of evidence of prior bad acts, we utilize a two-tiered analysis. The first tier involves a two-part inquiry: (1) whether there is sufficient evidence to establish the prior bad acts as fact; and (2) whether the prior bad acts are relevant to a material disputed issue concerning the crime charged, other than propensity. *State v. Grist*, 147 Idaho 49, 52, 205 P.3d 1185, 1188 (2009). We defer to a trial court's factual findings if

---

[1]     Two of the charges were based on conduct against J.P., one charge was dismissed and the jury acquitted Pokorney on the other charge.

supported by substantial and competent evidence in the record. *State v. Porter*, 130 Idaho 772, 789, 948 P.2d 127, 144 (1997). In this case, Pokorney does not challenge the existence of the prior bad act as an established fact. Therefore, we address only the second part of the first tier -- the relevancy determination. Whether evidence is relevant is an issue of law. *State v. Atkinson*, 124 Idaho 816, 819, 864 P.2d 654, 657 (Ct. App. 1993). When considering admission of evidence of prior bad acts, we exercise free review of the trial court's relevancy determination. *Id.* The second tier in the analysis is the determination of whether the probative value of the evidence is substantially outweighed by unfair prejudice. I.R.E. 403; *Grist*, 147 Idaho at 52, 205 P.3d at 1188. This decision is committed to the discretion of the trial judge, and we review for an abuse of discretion. *Id.* Finally, error in the admission of evidence is not reversible unless it is prejudicial. *State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct. App. 1983).

## A.     Relevance

The district court determined that the proposed evidence was relevant and that its prejudicial effect did not substantially outweigh its probative value, stating:

> Okay. As far as the prior conviction coming in, the testimony of the prior acts of molestation, they are admissible. They will be allowed to be presented in the state's case in chief along with the prior conviction. I base that on *State v. Kremer*, the Field case that was cited and appropriately cited by the defense, dealt primarily with an individual who talked a great deal about sexual acts; but, again, there was no evidence of acts being perpetrated nor was there any similarity of gender, age, conduct between the prior bad act and the alleged crimes. In this case, the age group is similar in age. The circumstances are similar. It's more in line with *State v. Kremer*, K-R-E-M-E-R, 144 Idaho 286.
>
> They will be admitted upon proper foundation, obviously, as well as the letters from the defendant that were attached to your motion, again, upon proper foundation.
>
> The court in weighing the prior bad acts with the provisions of Idaho Rule 403 -- obviously, these are prejudicial. The question is: Is the probative value outweighed by the prejudicial effect? The court will find that the probative value -- that being the defendant's prior conduct towards similar age groups, males -- is highly probative of a -- when we look at 404 subpart (b), "plan," "motive," "preparation," several of those factors outlined in that rule, clearly, it's highly, highly probative of that. And the court will find that the probative value is not outweighed by the prejudicial effect. So, the state can present that evidence in their case in chief.

The district court admitted the evidence because of the similarity of gender, age and conduct between the prior bad act and the alleged crimes. At the time of its decision, the district court

did not have the benefit of our Supreme Court's opinions in *Grist* and *State v. Johnson*, 148 Idaho 664, 227 P.3d 918 (2010).

Courts are to apply the same standard in sexual abuse cases as is applied in other cases for allowing evidence of other bad acts under Rule 404(b). *Grist*, 147 Idaho at 51, 205 P.3d at 1187. Evidence of other misconduct may not be admitted pursuant to Rule 404(b) when its probative value is entirely dependent upon its tendency to demonstrate the defendant's propensity to engage in such behavior. *Grist*, 147 Idaho at 54, 205 P.3d at 1190. Idaho Rule of Evidence 404(b) allows evidence of other crimes for purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." "At a minimum, there must be evidence of a common scheme or plan beyond the bare fact that sexual misconduct has occurred with children in the past." *Johnson*, 148 Idaho at 668, 227 P.3d at 922. The events must be linked by common characteristics that go beyond merely showing a criminal propensity. *Id*. In *Johnson*, the trial court admitted evidence of prior sexual abuse because of similarities in age, gender, and conduct. *Id*. at 669, 227 P.3d at 923. The *Johnson* Court held that the similarities merely demonstrated a propensity and did not rise to the level of a common scheme or plan. *Id*.

As in *Johnson*, admission in this case of evidence of prior misconduct based upon similarity of circumstances, without more, was erroneous. Indeed, the State argues for admissibility on the separate ground that the letter and associated testimony of B.W. was relevant to show that Pokorney was manipulating his son, a potential accuser and/or witness, which demonstrated consciousness of guilt. Where a ruling in a criminal case is correct, though based upon an incorrect reason, it may be sustained upon the proper legal theory. *State v. Pierce*, 107 Idaho 96, 102, 685 P.2d 837, 843 (Ct. App. 1984).

Rule 404(b) allows evidence of other acts if admitted for the purpose of showing knowledge or consciousness of guilt. *State v. Sheahan*, 139 Idaho 267, 279, 77 P.3d 956, 968 (2003). Consciousness of guilt has been found in a variety of circumstances. Evidence of flight, escape, or failure to appear on the part of a defendant is often identified as relevant to demonstrate consciousness of guilt. *State v. Rossignol*, 147 Idaho 818, 822, 215 P.3d 538, 542 (Ct. App. 2009) (allowed evidence that defendant failed to appear at a hearing to increase bond and left the jurisdiction); *State v. Moore*, 131 Idaho 814, 819-20, 965 P.2d 174, 179-80 (1998) (admitted evidence that defendant left Idaho for his home in Oregon to avoid a scheduled

interview from an officer investigating lewd conduct); *State v. Friedley*, 122 Idaho 321, 322-23 834 P.2d 323, 324-25 (Ct. App. 1992) (allowed stipulation that defendant failed to appear at arraignment and at the initially scheduled trial on drug charges).

Evidence of a defendant's efforts to influence or affect evidence, such as intimidating a witness, offering to compensate a witness, and fabrication, destruction or concealment of evidence may be relevant to demonstrate consciousness of guilt.[2]  In *Sheahan*, officers handcuffed the defendant and placed bags over his hands to preserve evidence of a shooting. Sheahan's attempts to remove the bags and thus destroy evidence implicated consciousness of guilt. *Sheahan*, 139 Idaho at 279, 77 P.3d at 968.  In *State v. Rolfe*, 92 Idaho 467, 470, 444 P.2d 428, 431 (1968), evidence of the defendant's offer to pay a witness for false testimony was held admissible. *Id.*[3]

In both the flight and influencing evidence circumstances, the actions of the defendant suggest an attempt to evade justice and, hence, implicate consciousness of guilt.  It is not necessary for the actions to be illegal. *See Moore*, 131 Idaho at 819, 965 P.2d at 179.  Moreover, while there may be an innocent explanation for such action, the alternative explanation generally goes to the weight, not the admissibility, of the evidence. *Rossignol*, 147 Idaho at 823, 215 P.3d at 543; *Sheahan*, 139 Idaho at 279, 77 P.3d at 968.

In the letter, Pokorney tells his son a version of the story involving his prior conviction for illegal sexual conduct.  He prefaces the story by stating that in the letter he is playing "devil's advocate."  He further states that both his wife and an older son know of the prior conviction and

---

[2]     *See* California Criminal Jury Instruction 2.06, which states:
> If you find that a defendant attempted to suppress evidence against [himself] [herself] in any manner, such as [by the intimidation of a witness] [by an offer to compensate a witness] [by destroying evidence] [by concealing evidence] [by _____], this attempt may be considered by you as a circumstance tending to show a consciousness of guilt.  However, this conduct is not sufficient by itself to prove guilt, and its weight and significance, if any, are for you to decide.

*See also California v. Wilson*, 114 P.3d 758, 773 (Cal. 2005) (defendant solicited the murder of a key witness); *California v. Johnson*, 842 P.2d 1, 29-30 (Cal. 1992) (defendant refused to appear in a lineup).

[3]     The Ninth Circuit recognizes that intimidating witnesses shows a consciousness of guilt. *United States v. Begay*, 567 F.3d 540, 552, (9th Cir. 2009) ("a defendant's threats against a witness are admissible to show consciousness of guilt").

how easily he could be in trouble if "further accused." In the story, he claims that he "let" a teenager perform oral sex on him in Montana and was later convicted. He tells his son that he has worked through the "false guilt" heaped upon him by the "unenlightened" who stand to gain "by making human behavior, mistaken or otherwise, serious crime." He claims that his prior conduct would not be a crime in 95% of countries in the world and, further, that "spontaneous opportunistic sex acts between those of the same sex does nothing to change the long-term sexual orientation of those involved." Pokorney then purports to cite to "The Naked Ape" for the propositions that:

> [O]ver half of all males have indulged in homosexual behavior -- sexual contact to the point of orgasm -- by the age of forty. 12% of males have sexual contact with other animal species and 58% of females and 92% of males masturbate. Male lions masturbate -- and no doubt would watch porn if they could. The average (not the lowest) age of sexual contact with other males is age 12. Like prositution, [sic] non [sic] of these human sexual activities are harmful for the human species, and because they provide outlets for human sexual tension, are indeed useful for the naked ape. There is nothing biologically unusual about male to male contact of pseudo-copulation, and limited behavior does not have long-term sexual consequences -- is a useful outlet -- and typically disappears when a member of the opposite sex appears on the scene.

Consistent with these views, he next references the Montana teenager as "my so-called 'victim,'" claiming he was not harmed, bears no ill-will and is happily married.[4] The inference is that he wanted his son to believe that his prior act specifically, and the act generally, is not wrongful, but a natural act which should not be criminalized.

Next, Pokorney writes of events and circumstances related to Uncle Fred's homosexuality, Uncle Greg's sexual abuse of his son, a woman named Taylor's abuse of her children and a man named Taylor's sexual abuse of his step-daughter.[5] His apparent points from these stories are: (1) "to show you what fear of sexuality can do to people;" (2) "all this misery and deceit caused by the way individuals and society views sex;" and (3) that when the government gets involved people go to prison, kids lose their dads, relationships end, no one gets

---

[4]     The principal point of B.W.'s testimony was to tell his own version of the prior event and its affect on him, which was substantially different from Pokorney's characterization in the letter. Thus, the relevance of B.W.'s testimony is dependant on the admissibility of the letter.

[5]     Commenting, "(at least I'm not sleeping with my step-daughter)."

help, and "the government hurt who ever they could and helped nobody."  An implication from these stories and statements is that Pokorney wanted his son to believe that criminalization of sex acts is wrong and only bad things will happen if a government prosecution ensues.

Pokorney next turns to the issue at hand, which is "that some of my boys have said I sexually molested them."  He denies it.  He states that he does not know who is accusing him. He takes the son to whom the letter is written to task if he is one of the accusers.  He spends considerable time placing the blame on the mother (although pitying her) who he claims was trying to get custody by using the government to hurt him.  He states:

> Even if I were guilty of some kind of sex thing with the kids -- why would your mom call the police and try to get me into legal trouble?  To hurt me.  Do you think I would try to hurt mom if she molested the boys?  Do you think I would throw you away if you "molested" a girl at a beer party?  Of course not!

He states that if other family members made a mistake he would not try to make it worse. Thereafter, Pokorney writes:

> Every male in the United States is a "sex-offender" and you or [another son] should know how easy it could happen to you -- that you could be on the register. The growth in "sex-crimes" is the result of the explosive treatment industry.  Its all about money -- whether its for prison or treatment, somebody gets paid for other peoples mistakes.  They love and encourage families to call and report each other, their friends, etc.  It keeps them in the money and us poor -- protecting nothing except their jobs.

Pokorney certainly wanted his son to fear government involvement, to the point of suggesting to his son that he himself could end up on the register.  The statements "even if I were guilty" and "every male in the United States is a 'sex-offender'" can be seen as implying consciousness of his own guilt.

The letter Pokorney wrote is odd and clearly not the type of letter most parents would write to a child.  The purpose behind telling his son about how other families had been destroyed by lewd conduct prosecution was, apparently, to convince his son that charging him with lewd conduct would hurt the family.  In the letter, Pokorney did not make an explicit attempt to influence evidence, but a fair interpretation identifies that as its intended purpose.  Pokorney was attempting to persuade the oldest son, still living at home, to provide helpful testimony and, arguably, for him to convince the younger sons not to testify.  It is true that more innocent explanations for the letter may be advanced.  However, the existence of alternative reasons or

7

other explanations goes to the weight of the evidence and not to its relevance. Thus, we conclude the evidence was relevant as demonstrating consciousness of guilt.

## B. Prejudice

We turn to the question of whether the probative value of the evidence is substantially outweighed by unfair prejudice. *Grist*, 147 Idaho at 52, 205 P.3d at 1188. We review the district court's determination for an abuse of discretion. *Id.* When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

Idaho Rule of Evidence 403 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Evidence is not unfairly prejudicial simply because it is damaging to a defendant's case. Evidence is unfairly prejudicial when it suggests decision on an improper basis. *State v. Floyd*, 125 Idaho 651, 654, 873 P.2d 905, 908 (Ct. App. 1994).

The Supreme Court, in *Johnson,* determined that the prior bad act evidence was irrelevant and did not, therefore, engage in a Rule 403 analysis. However, the *Johnson* Court did conduct a harmless error analysis and the Court's discussion of prejudice is instructive. In *Johnson*, the evidence of his crime was limited to the testimony from his daughter. *Johnson*, 148 Idaho at 669, 227 P.3d at 923. There was no physical evidence and the case hinged on the daughter's testimony. Thus, the testimony from Johnson's sister and father that he committed prior bad acts against his sister had an especially high risk of infecting the trial. Even though the trial court gave a limiting instruction for the sister's and father's testimonies, the Court found the error was not harmless. The Court stated: "Evidence of prior sexual misconduct with young children is so prejudicial that there is a reasonable possibility this error contributed to Johnson's conviction." *Id.* at 670, 227 P.3d at 924. "[A]dmitting such propensity evidence may reflect 'the unstated belief that sexual deviancy is a character trait of especially powerful probative value for predicting a defendant's behavior.'" *Id.* (quoting *State v. Field*, 144 Idaho 559, 569-70, 165 P.3d

8

273, 283-84 (2007)). "The danger is too great in this sex-abuse case that the jury may have believed the prior misconduct demonstrated Mr. Johnson's deviant character traits." *Id.*

The letter and testimony of B.W. highly favored the prosecution and went beyond showing a consciousness of guilt. The letter reflected to the jury Pokorney's deviant views on sex, sex abuse and prosecution for sexual crimes. The letter implied to the jury that Pokorney does not view sexual contact between adults and minors as wrong, a crime, or even harmful. The prejudicial effect of the letter was compounded by B.W.'s testimony. Ostensibly because the letter painted an incorrect picture of the prior event, B.W.'s testimony was necessary to correct any misimpression the jury may take from the letter. B.W.'s testimony was graphic and, at one point, the court offered a recess in the testimony because B.W. became so emotional.

Recognizing that the letter and B.W.'s testimony were relevant only to show consciousness of guilt, this Court must answer the question of whether the relevance was substantially outweighed by the risk of unfair prejudice. Particularly in light of *Grist* and *Johnson*, which, again, the district court did not have the benefit of, we must conclude that the district court erroneously balanced the probative value against the prejudicial effect of the evidence. Even with a limiting instruction, there was a high risk that the jury would convict Pokorney based upon propensity and sexual deviancy. We are constrained to conclude that the unfair prejudice substantially outweighed the probative value of the evidence. The district court's admission of the evidence was an abuse of discretion.

## C. Harmless Error

The State argues, even if there was error, the error was harmless. Error is not reversible unless it is prejudicial. *Stoddard*, 105 Idaho at 171, 667 P.2d at 274. With limited exceptions, even constitutional error is not necessarily prejudicial error. *Id.* Thus, we examine whether the alleged error complained of in the present case was harmless. *See State v. Lopez*, 141 Idaho 575, 578, 114 P.3d 133, 136 (Ct. App. 2005). To hold an error harmless, this Court must declare a belief, beyond a reasonable doubt, that there was no reasonable possibility that the evidence complained of contributed to the conviction. *State v. Sheldon*, 145 Idaho 225, 230, 178 P.3d 28, 33 (2008).

As in *Johnson*, except for the challenged evidence, the evidence against Pokorney was largely his sons' words against his. But, beyond just the evidence of prior sexual misconduct reviewed in *Johnson*, here the letter adds Pokorney's minimization of the prior event and

9

expressed and implied deviant views relative to sexual contact between adults and minors and criminalization thereof, all of which the jury was extremely likely to hold against him. We cannot say that the error in admitting the evidence was harmless.

## III.

## CONCLUSION

The challenged evidence was relevant to demonstrate consciousness of guilt. However, the district court erred in its Rule 403 analysis. The probative value of the evidence was substantially outweighed by the risk of unfair prejudice. We cannot say that the error was harmless and, accordingly, we vacate the judgment of conviction and remand for further proceedings.

Judge GUTIERREZ and Judge MELANSON, **CONCUR.**