Judge GUTIERREZ,
dissenting.
I respectfully dissent. Because the district court acted without the benefit of two recent Idaho Supreme Court decisions, State v. Johnson, 148 Idaho 664, 667, 227 P.3d 918, 921 (2010), and State v. Grist, 147 Idaho 49, 52, 205 P.3d 1185, 1188 (2009), in which the Supreme Court concluded that the admission of I.R.E. 404(b) evidence in child sex abuse cases is subject to the same analysis as the admission of such evidence in any other case, I would vacate the judgment of conviction and remand for a new trial.
In Grist, the Supreme Court set forth the new standard for admissibility pursuant to I.R.E. 404(b), requiring trial courts to first determine whether there is sufficient evidence to establish the other crime or wrong as fact, and whether the fact of another crime or wrong is relevant to a material disputed issue concerning the crime charged, other than propensity. Grist, 147 Idaho at 52, 205 P.3d at 1188. The trial court must next engage in a balancing under I.R.E. 403 and determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Id. The Grist Court highlighted the trial court’s “discomfort with the status of I.R.E. 404(b) jurisprudence in Idaho,” where the lower court stated: “I think that there has largely been a class of cases that have developed that are unique to sexual abuse eases. And I’m — I think that I’m bound to follow that.” Grist, 147 Idaho at 53, 205 P.3d at 1189. The Supreme Court then concluded:
Although the district court was applying controlling precedent from the appellate courts of this state, the district court did not determine whether there was sufficient evidence to establish as fact Grist’s prior uncharged sexual misconduct with [his ex-wife’s daughter] nor did the district court articulate whether the evidence was probative because it demonstrated the existence of a common scheme or plan or because it tended to otherwise corroborate [the victim’s] testimony.
Grist, 147 Idaho at 53, 205 P.3d at 1189. The Court declined to rule on the admissibility of the challenged evidence, leaving that determination for the trial court on remand. The Court did, however, instruct trial courts that they must “carefully scrutinize evidence offered as ‘corroboration’ or as demonstrating a ‘common scheme or plan’ in order to avoid the erroneous introduction of evidence that is merely probative of the defendant’s propensity to engage in criminal behavior.” Id.
The Idaho Supreme Court acknowledged that some of its previous decisions, State v. Tolman, 121 Idaho 899, 828 P.2d 1304 (1992), and State v. Moore, 120 Idaho 743, 819 P.2d 1143 (1991), had been “interpreted as creating an exception in child sex cases to the prohibition of character evidence.” Grist, 147 Idaho at 51, 205 P.3d at 1187. While the Court criticized those decisions, it declined to overrule them in their entirety. Nevertheless, the Court emphasized that “the scope of evidence that may properly be admitted pursuant to I.R.E. 404(b) is no greater in sex crime cases than it is for any other type of case.” Id. at 55, 205 P.3d at 1191. The Court concluded that because “the district court determined that the proffered evidence was governed by a body of law unique to sexual abuse cases,” the judgment of conviction must be vacated and the case remanded for a new trial. Id.
In this case, the district court relied upon State v. Phillips, 123 Idaho 178, 845 P.2d 1211 (1993), in denying Gomez’s motion to exclude I.R.E. 404(b) evidence. The Phillips Court quoted extensively from Moore and Tolman, which have since been overruled in part. The district judge noted that he was trial counsel for Phillips and that he argued the case at trial and on appeal. Quoting large portions of Phillips, the judge stated that he did not think that Phillips had ever been overruled, and that he would “adhere to what they did in that ease in this case.” The judge later commented that the Phillips case “has never set well with this judge,” stating:
Counsel, they teach us in the evidentiary classes that they give new judges that there are no rules in sex abuse cases. I don’t believe that, but I recognize that it *158 seems like lawyers that make your arguments are losing, [defense counsel], at this point in time. And I have been there.
It’s a tough area of the law. It’s just a tough area. I was—
[Defense counsel], you argued with fervor; but I can assure you, so did I. I put my heart into this argument. I thought it was grossly unfair in the Phillips trial that they could bring in witnesses that were molested years before, who made no criminal complaints. I just thought that was an outrage, but the Supreme Court shot me down; and I’m under a duty to follow the law.
In this case, as in Grist, the district court did not articulate the reasons that the evidence was probative. While this would not preclude an appellate court from affirming the lower court’s admittance of challenged evidence, and while I do not necessarily disagree with the majority that the evidence may have some relevance, I conclude that because the district court perceived that there are “no rules in sex abuse eases,” the appropriate remedy is to vacate the judgment of conviction and remand the case for a new trial. This remedy would allow the district court the opportunity to consider the admissibility of the evidence in light of Grist and Johnson.[6]
The Supreme Court in Grist repeatedly cautioned trial courts to “carefully scrutinize” evidence offered under I.R.E. 404(b) for purposes of corroboration or as demonstrating a common scheme or plan. Grist, 147 Idaho at 53-55, 205 P.3d at 1189-1191. The Grist Court even noted its previous caution in Tolman, where the Court stated: “We do not suggest today that any and all evidence of prior sexual misconduct is admissible in sex crime eases merely by placing it under the rubric of corroborative evidence of a common scheme or plan.” Grist, 147 Idaho at 54, 205 P.3d at 1190 (quoting Tolman, 121 Idaho at 905, 828 P.2d at 1310). This caution focuses on the importance of conducting a thorough relevance determination. Even relevant evidence, however, does not equate to admissible evidence. The Tolman Court did not limit its caution to the relevance inquiry, reminding trial courts that evidence of prior sexual misconduct “is still subject to the limitations imposed by I.R.E. 403.” Tolman, 121 Idaho at 905, 828 P.2d at 1310. I wish to add my caution to trial courts engaging in the weighing under I.R.E. 403 of evidence of prior sexual misconduct.
Trial courts are charged with exercising their discretion in determining whether the probative value of relevant evidence of prior sexual misconduct is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. See I.R.E. 403. When a trial court’s discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. State v. Hedger, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989). While the district court has broad discretion in the admission and exclusion of evidence, State v. Perry, 139 Idaho 520, 521, 81 P.3d 1230, 1231 (2003), such discretion is not without limita *159 tion, see State v. Medrano, 123 Idaho 114, 118, 844 P.2d 1364, 1368 (Ct.App.1992). The import and limitations of this discretion have been described as follows:
[T]his is not a discretion to depart from the principle that evidence of other crimes, having no substantial relevancy except to ground the inference that [the] accused is a bad man and hence probably committed this crime, must be excluded. The leeway of discretion lies rather in the opposite direction, empowering the judge to exclude the other-crimes evidence, even when it has substantial independent relevancy, if in his judgment its probative value for this purpose is outweighed by the danger that it will stir such passion in the jury as to siueep them beyond a rational consideration of guilt or innocence of the crime on trial Discretion implies not only leeway but responsibility. A decision clearly wrong on this question of balancing probative value against danger of prejudice will be corrected on appeal as an abuse of discretion. [Emphasis added.]
State v. Stoddard, 105 Idaho 533, 537, 670 P.2d 1318, 1322 (Ct.App.1983) (quoting McCormick, Handbook of the Law of Evidence § 190 (Cleary ed. 1972)).
I question whether trial judges in Idaho were “empower[ed] ... to exclude the other-crimes evidence” in the wake of Moore and Tolman. Indeed, I question whether trial judges perceived that they had discretion at all to exclude evidence of prior sexual misconduct. While this discretion is committed to the trial courts, Idaho’s appellate courts have not necessarily encouraged a thorough analysis under I.R.E. 403 in light of Moore and Tolman. See e.g., State v. Cross, 132 Idaho 667, 671, 978 P.2d 227, 231 (1999) (holding that “[b]y following [the] ... decisions in Moore and Tolman, the trial court acted within the boundaries of its discretion and reached its decision through an exercise of reason”); State v. Spor, 134 Idaho 315, 320, 1 P.3d 816, 821 (Ct.App.2000) (holding that “[b]y following the reasoning in Tolman and Moore, the trial court acted within the boundaries of its discretion and reached its decision through an exercise of reason”).[7] While I do not believe that Moore and Tolman meant to relieve trial courts of the requirement to conduct a balancing test under I.R.E. 403,[8] that may have been the practical effect in many subsequent cases. In other words, Idaho’s appellate courts were complicit in perpetuating the incorrect assumption that where evidence of prior sexual misconduct was relevant under Moore and Tolman, such evidence automatically survived an I.R.E. 403 analysis and was admissible. As such, trial courts have been given little to no guidance on conducting a balancing test under I.R.E. 403 of evidence of prior sexual misconduct.
In setting forth the new admissibility standard, Grist offered some guidance, stating:
“The prejudicial effect of [character evidence] is that it induces the jury to believe the accused is more likely to have committed the crime on trial because he is a man of criminal character.” State v. Wrenn, 99 Idaho 506, 510, 584 P.2d 1231, 1235 (1978). Character evidence, therefore, takes the jury away from their primary consideration of the guilt or innocence of the particular crime on trial. Id. The drafters of I.R.E. 404(b) were careful to guard against the admission of evidence that would unduly prejudice the defendant, while still allowing the prosecution to present probative evidence.
Grist, 147 Idaho at 52, 205 P.3d at 1188. In State v. Pokorney, 149 Idaho 459, 235 P.3d 409 (Ct.App.2010), this Court relied upon Johnson in concluding that the trial court abused its discretion in admitting evidence of prior sexual misconduct. We stated:
*160 The Supreme Court, in Johnson, determined that the prior bad act evidence was irrelevant and did not, therefore, engage in a Rule 403 analysis. However, the Johnson Court did conduct a harmless error analysis and the Court’s discussion of prejudice is instructive. In Johnson, the evidence of his crime was limited to the testimony from his daughter. Johnson, 148 Idaho at 669, 227 P.3d at 923. There was no physical evidence and the ease hinged on the daughter’s testimony. Thus, the testimony from Johnson’s sister and father that he committed prior bad acts against his sister had an especially high risk of infecting the trial. Even though the trial court gave a limiting instruction for the sister’s and father’s testimonies, the Court found the error was not harmless. The Court stated: “Evidence of prior sexual misconduct with young children is so prejudicial that there is a reasonable possibility this error contributed to Johnson’s conviction.” Id. at 670, 227 P.3d at 924. “[AJdmitting such propensity evidence may reflect ‘the unstated belief that sexual devianey is a character trait of especially powerful probative value for predicting a defendant’s behavior.’ ” Id. (quoting State v. Field, 144 Idaho 559, 569-70, 165 P.3d 273, 283-84 (2007)). “The danger is too great in this sex-abuse case that the jury may have believed the prior misconduct demonstrated Mr. Johnson’s deviant character traits.” Id.
Pokorney, 149 Idaho at 465-66, 235 P.3d at 415-16. We noted in Pokomey that while the challenged evidence was relevant as demonstrating consciousness of guilt, it also reflected to the jury the defendant’s sexual devianey. As such, we concluded:
Particularly in light of Grist and Johnson, which, again, the district court did not have the benefit of, we must conclude that the district court erroneously balanced the probative value against the prejudicial effect of the evidence. Even with a limiting instruction, there was a high risk that the jury would convict Pokorney based upon propensity and sexual devianey. We are constrained to conclude that the unfair prejudice substantially outweighed the probative value of the evidence. The district court’s admission of the evidence was an abuse of discretion.
Pokorney, 149 Idaho at 466, 235 P.3d at 416.
Turning to the evidence in this case, I conclude that the overwhelming effect of the evidence of uncharged sexual misconduct was to emphasize to the jury Gomez’s propensity to commit sex crimes. Gomez was charged with one crime, i.e., lewd conduct with V.B., consisting of one instance of touching and rubbing her breasts and vagina and offering her money to sleep with him. Y.B. relayed her account of the charged conduct at trial. She also testified, however, regarding acts for which Gomez was not on trial, i.e., that Gomez had touched her on multiple occasions while she was sleeping, that he attempted to get into the bathroom while she was in the shower, that he made lewd comments to her, that he walked around in his underwear, and that he exposed himself to her. Each of V.B.’s sisters testified to similar encounters with Gomez, essentially testifying, without limitation, regarding any instance that they could recall. V.B.’s friend was also allowed to testify about her own alleged encounter with Gomez.
Following Grist, this Court, in State v. Parmer, 147 Idaho 210, 207 P.3d 186 (Ct.App.2009), addressed the question of whether the trial court abused its discretion in concluding that testimony from eight Rule 404(b) witnesses was unduly cumulative. While we concluded, based upon the circumstances of that case, that the court did not abuse its discretion, we noted:
The question of the number of witnesses testifying to prior bad acts is a matter of concern under Rule 403 analysis. Since the testimony is inherently prejudicial, at some point the number of such witnesses can become excessive and overwhelm the probative value of the evidence. This determination is left to the discretion of the trial court. The number of witnesses appropriate to establish a common scheme or plan, absence of accident or mistake, or intent will vary with each case. Thus, the issue cannot be resolved by drawing an arbitrary line. The Supreme Court in Grist held that trial courts must make *161 such admissibility determinations on a case-by-case basis while remaining cognizant of the potential cumulative effect of the evidence and its tendency toward proving propensity and bad character. Grist, 147 Idaho at 52, 205 P.3d at 1188.
Parmer, 147 Idaho at 221, 207 P.3d at 197.
In this ease, V.B. and five other witnesses testified regarding uncharged sexual misconduct. It is not only the number of witnesses, however, that must be considered. The number of instances of uncharged sexual misconduct that each witness intends to testify to is also important to consider under Rule 403 analysis. Gomez was forced to defend himself not only against V.B.’s accusations regarding one incident, but also against her testimony, as well as the testimony of her sisters and friend, regarding allegations beginning in 1996 and stretching through 2006. Essentially, Gomez had to challenge the credibility of each one of the accusing witnesses. As such, there was a high risk that the sheer amount of evidence of uncharged sexual misconduct took “the jury away from their primary consideration of the guilt or innocence of the particular crime on trial.” Grist, 147 Idaho at 52, 205 P.3d at 1188. In spite of the court’s limiting instructions, it is difficult to imagine how the jury could confine their deliberations to the single crime charged when multiple crimes involving six different witnesses were testified to at trial. I acknowledge that some of the I.R.E. 404(b) evidence may have even been highly probative. However, in exercising their discretion, trial courts must be vigilant in guarding against the danger of a jury convicting a defendant, not for the crimes for which he stands trial, but for a multitude of crimes for which he has never even been charged. Because there is such a danger in this case, and because the district court did not have the benefit of recent ease law in making its Rule 403 determination, I would vacate the judgment of conviction and remand for a new trial.

. I note that Grist and Johnson do not necessarily clarify the state of the law regarding the admissibility of evidence of prior sexual misconduct. While it is clear that the same standard applies in child sex abuse cases as in any other case, the Court’s refusal to overrule Moore and Tolman in their entirety raises a number of questions. Grist and Johnson primarily address the question of admissibility of prior bad acts in the context of common scheme or plan. The Johnson Court set forth three theories of how courts could require previous bad acts to be linked to the charged conduct in order to establish a common plan under Rule 404(b), but then declined to adopt any of those theories. Johnson, 148 Idaho at 668 n. 3, 227 P.3d at 922 n. 3. As such, there is still little guidance for trial courts addressing the question of whether some instances of prior sexual misconduct may be relevant in a child sex abuse case. Nevertheless, remanding the case would still allow the court the opportunity to evaluate the admissibility of the evidence without the erroneous application of Moore and Tolman.

. I do not suggest that trial courts are required to articulate an extensive I.R.E. 403 analysis on the record. However, such an articulation does provide a basis upon which an appellate court can consider whether the trial court abused its discretion. Nor do I suggest that appellate courts are required to set forth extensive analysis of the issue in each case. Some guidance, however, might be warranted.

. Indeed, as noted above, Tolman explicitly stated that evidence of prior sexual misconduct "is still subject to the limitations imposed by I.R.E. 403.” Tolman, 121 Idaho at 905, 828 P.2d at 1310. Nevertheless, that caution may have gone unheeded.