**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket Nos. 37393/37395**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2012 Unpublished Opinion No. 383** |
| | ) | |
| Plaintiff-Respondent, | ) | **Filed: March 1, 2012** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **PATRICK E. McAVOY,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| Defendant-Appellant. | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Elmore County. Hon. Cheri C. Copsey, District Judge.

Judgment of conviction for video voyeurism and unified sentence of five years, with three years determinate, <u>affirmed</u>; judgment of conviction for possession of sexually exploitive material and video voyeurism and consecutive sentences of ten years indeterminate and five years indeterminate, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Erik R. Lehtinen, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Elizabeth A. Koeckeritz, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Patrick E. McAvoy appeals from his judgments of conviction and sentences for one count of possession of sexually exploitive material and two counts of video voyeurism. Specifically, McAvoy asserts the district court erred in allowing Idaho Rule of Evidence 404(b) prior bad act evidence to be admitted at trial. McAvoy also argues the district court unconstitutionally imposed maximum sentences as punishment for exercising his right to a jury trial. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Sometime during 2006, McAvoy set up a hidden, motion-sensored camera in his bedroom. This camera was connected to a computer and recorded images of his adult

1

sister-in-law, while undressed, as she used a tanning bed located in that bedroom. Following discovery of one such recorded video on McAvoy's computer, he was charged in March 2009 with one count of video voyeurism (first case). An investigation of the first case and search of McAvoy's computer revealed recorded images captured by the same camera of a sixteen-year-old girl using the tanning bed and engaging in other activities that were sexual in nature. Roughly a month later, based on those images, a second case was filed against McAvoy charging one count of possession of sexually exploitive material, one count of video voyeurism, and one count of sexual battery of a minor child sixteen or seventeen years of age (second case).

McAvoy waived the preliminary hearing in both cases and was bound over to district court. The two cases were consolidated after an information had been filed as to each. At a pretrial conference, McAvoy indicated he was going to plead guilty to the first case and exercise his right to a jury trial in the second case. The State then declared its intent to offer evidence from the first case in the trial for the second case and filed a motion in limine to admit the Idaho Rule of Evidence 404(b) prior bad act evidence. McAvoy objected to the introduction of any such evidence. The district court initially ruled that, although relevant, the evidence from the first case would not be allowed due to concerns of prejudice, but cautioned that any hint from McAvoy or his defense counsel regarding intent, motive, accident, or mistake would "open the door" to the Rule 404(b) evidence and result in the district court reconsidering the admissibility of the evidence.

On the morning of trial, McAvoy pled guilty to one count of video voyeurism, Idaho Code § 18-6609, in the first case and the second case proceeded. During the State's case-in-chief, defense counsel cross-examined one of the State's witnesses, Detective Ty Larsen. Defense counsel asked whether McAvoy had indicated at the time of his interview with the detective that certain videos were intentionally made or had said whether there were more videos beyond that which sparked the investigation in the first case. The detective testified that he did not recall any statements McAvoy made regarding any intent to record, but that McAvoy had stated that he believed there were no other videos. Defense counsel also inquired about the detective's involvement in investigating child pornography cases, the detective's indication of that involvement in his affidavit for a search warrant, and whether any images of underage girls were found in the forensic analysis of McAvoy's computer beyond a single recording of the underage victim. The witness indicated that no other images of people under the age of eighteen

2

were found.  Based on that cross-examination, the State renewed its Rule 404(b) motion in limine.  The district court ruled McAvoy had opened the door and allowed in the evidence from the first case, including testimony relating seven prior recording dates and publication to the jury of five video clips of the first victim, to prove that McAvoy intended to videotape the victim in the second case.  At the conclusion of the trial, the jury found McAvoy guilty on two counts, possession of sexually exploitive material, I.C. § 18-1507A, and video voyeurism, I.C. § 18-6609, and acquitted him on the third count, sexual battery of a minor.

At a consolidated sentencing hearing for both the first and second cases, the district court imposed, collectively, a unified twenty-year sentence, with three years determinate:  a unified term of five years, with three years determinate for video voyeurism in the first case; a ten-year indeterminate term for possession of sexually exploitive material in the second case; and a five-year indeterminate term for video voyeurism in the second case.  The sentences were to run consecutively.

McAvoy timely appeals, asserting the district court erred in allowing the Rule 404(b) evidence to be introduced in the second case and that the district court unconstitutionally punished McAvoy at sentencing for exercising his right to a jury trial.

## II.

## DISCUSSION

### A.     Whether the District Court Erred in Admitting Rule 404(b) Evidence

McAvoy argues the district court erred in admitting the prior bad act evidence from the first case at the trial of the second case because the evidence was irrelevant to prove anything other than criminal propensity.  Evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's criminal propensity.  I.R.E. 404(b); *State v. Johnson*, 148 Idaho 664, 667, 227 P.3d 918, 921 (2010); *State v. Parmer*, 147 Idaho 210, 214, 207 P.3d 186, 190 (Ct. App. 2009).  However, such evidence may be admissible for a purpose other than that prohibited by Idaho Rules of Evidence 404(b).  *Parmer*, 147 Idaho at 214, 207 P.3d at 190.  To determine the admissibility of evidence of prior bad acts, a court must use a two-tiered analysis:  (1) the evidence must be relevant; and (2) the probative value must substantially outweigh any unfair prejudice to the defendant.  *State v. Grist*, 147 Idaho 49, 52, 205 P.3d 1185, 1188 (2009).  Under the first tier, the prior bad act evidence is only relevant if the jury can reasonably conclude the act occurred and the defendant was the actor.  *Id*.  Thus, there must be sufficient evidence to

establish the prior bad acts as fact. *Id*. Relevancy in this context also requires that the prior bad act evidence is relevant to a material, disputed issue concerning the crime charged, other than criminal propensity. *Id*. We defer to a trial court's factual determination that a prior bad act has been established by sufficient evidence if it is supported by substantial and competent evidence in the record. *Parmer*, 147 Idaho at 214, 207 P.3d at 190. Whether evidence is relevant is an issue of law. *Johnson*, 148 Idaho at 667, 227 P.3d at 921; *Parmer*, 147 Idaho at 214, 207 P.3d at 190. Therefore, when considering admission of evidence of prior bad acts, we exercise free review of the trial court's relevancy determination. *Parmer*, 147 Idaho at 214, 207 P.3d at 190.

The second tier in the analysis is the determination of whether the probative value of the evidence is substantially outweighed by unfair prejudice. *Grist*, 147 Idaho at 52, 205 P.3d at 1188. When reviewing this tier we use an abuse of discretion standard. *Id.* When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

McAvoy makes three arguments regarding the admission of the Rule 404(b) evidence in the second case: (1) McAvoy did not open the door to the evidence; (2) if McAvoy opened the door, the district court failed to undertake the proper analysis in determining whether the evidence should be admitted; and (3) even if the court used the proper analysis, it erred in admitting the evidence.

## 1. Opening the door

Evidence falling within Rule 404(b) may be introduced at trial provided that the State gives the defendant notice of its intent to use the evidence. *See Johnson*, 148 Idaho at 667, 227 P.3d at 921. The evidence may, upon a district court's affirmative ruling on a motion in limine, then be used to establish an element of the crime in the prosecution's case-in-chief, whether or not a defendant opens the door. *See Parmer*, 147 Idaho at 219, 207 P.3d at 195. Where a trial judge initially rules against the admission of Rule 404(b) evidence, the defendant may nevertheless open the door by putting the relevant acts covered by Rule 404(b) at issue. *See*

4

*State v. Cardell*, 132 Idaho 217, 218, 970 P.2d 10, 11 (1998); *State v. Gardiner*, 127 Idaho 156, 161-62, 898 P.2d 615, 620-21 (Ct. App. 1995).

The portion of defense counsel's cross-examination of the detective, which the district court held opened the door to the Rule 404(b) evidence, was as follows:

| [Defense Counsel]: | Do you recall Mr. McAvoy relating to you that the image regarding [victim in the first case] was intentional? |
|---|---|
| [Detective Larsen]: | No, I do not recall it being intentional. |
| [Defense Counsel]: | Let me clarify the question. Do you recall whether he related that? |
| [Detective Larsen]: | No. |
| [Defense Counsel]: | You have no recollection at all? |
| [Detective Larsen]: | I remember discussing it and discussing about what had occurred in that video that I did witness. |
| [Defense Counsel]: | But you do not recall that specific statement from him? |
| [Detective Larsen]: | No, I do not. |
| [Defense Counsel]: | Do you recall him making a statement that--well, he told you when asked that there shouldn't be any other videos; correct? |
| [Detective Larsen]: | Correct. |
| [Defense Counsel]: | Do you recall whether there was a statement of whether there were any other videos intentionally made? |
| [Detective Larsen]: | Are you asking a question? |
| [Defense Counsel]: | Yes. |
| [Detective Larsen]: | His comment to me or his reply back to me is he did not believe there was [sic] any other videos. |
| [Defense Counsel]: | And that's all that was said? |
| [Detective Larsen]: | Yes. |

An additional portion of cross-examination cited to by the State on its renewed motion was as follows:

| [Defense Counsel]: | You'd indicated that you were involved with other child pornography cases; correct? |
|---|---|
| [Detective Larsen]: | Yes, sir. |
| [Defense Counsel]: | And it was based on your experience that you believed there would be other images stored in the computer; is that correct? |
| [Detective Larsen]: | Possibility. |
| [Defense Counsel]: | Okay. And you related that to the judge when you asked for the search warrant? |
| [Detective Larsen]: | Yes. |
| [Defense Counsel]: | But to your knowledge, no other images were found; is that correct? |

5

| | |
|---|---|
| [Detective Larsen]: | Not of people under the age of 18. |
| [Defense Counsel]: | Okay. Thank you. And I meant to ask that. Thank you for clarifying that. |

On the renewed Rule 404(b) motion, the district court found the issue of the intentional nature of the capture and retention of the videos had been clearly raised by defense counsel. The district court also concluded an implication that the videos were not intentionally taken was belied by the evidence in the first case and the reference to child pornography left the jury with the impression the investigation was regarding a matter other than video voyeurism, as was the case.

McAvoy argues these findings were in error. He asserts he did not open the door because defense counsel's cross-examination does not constitute *evidence* of a "mistake" or "accident" defense. Granted, a potential defense must be raised through evidence presented by the defendant before the State may introduce evidence concerning that issue. *State v. Montoya*, 140 Idaho 160, 163-64, 90 P.3d 910, 913-14 (Ct. App. 2004). However, we need not discuss whether cross-examination constitutes evidence of a defense because intent is an element of the offenses to which McAvoy was charged.[1] Where defense counsel's cross-examination of the State's witness left the impression of mistake and raised doubt as to an element of the offenses, the State may be allowed to bring in Rule 404(b) evidence proving otherwise. *See, e.g., Cardell*, 132 Idaho at 219-20, 970 P.2d at 12-13.

Moreover, this Court has previously found that a defendant can open the door to Rule 404(b) evidence through cross-examination of the State's witness. *Gardiner*, 127 Idaho at 161-62, 898 P.2d at 620-21. In *Gardiner*, the defendant was charged with felony injury to child. During trial, defense counsel objected pursuant to Rule 404(b) to the State's direct examination of the defendant's wife regarding a specific prior instance of the defendant's inappropriate disciplining of the child victim. The district court sustained the objection. In cross-examination of the wife, though, defense counsel elicited testimony regarding that incident and the district court later allowed other witnesses to testify regarding the same event to impeach the wife's testimony. We found no error because the cross-examination by defense counsel had opened the door to such testimony. *Gardiner*, 127 Idaho at 161-62, 898 P.2d at 620-21; *cf. State v. Rupp*, 118 Idaho 17, 18-19, 794, P.2d 287, 288-89 (Ct. App. 1990) (finding direct examination of

---

[1] *See* Idaho Code §§ 18-6609, 18-1507A, 18-1508A.

6

witness by defense counsel did not open the door to Rule 404(b) evidence because the core of the question did not imply a character trait of the defendant).

We conclude there was no error in the district court's finding that McAvoy opened the door to the admission of evidence from the first case in the trial for the second case. Defense counsel's questions to Detective Larsen specifically sought to elicit testimony about McAvoy's statements regarding his intent in making the videos. Likewise, by the testimony regarding the search warrant and Detective Larsen's involvement in other child pornography cases, defense counsel was attempting to emphasize that no other videos of underage persons were found--again going to the issue of lack of intent or mistake on McAvoy's part in videotaping the underage victim. It is more difficult to prove intent when only one recording is found, as opposed to a situation where multiple recordings were found. Such was the evidence from the first case involving multiple recordings, which directly related to whether McAvoy's video recordings were intentional. Further, the purpose of the search warrant was not to investigate child pornography, but video voyeurism. Defense counsel's questioning opened the door for the State to correct any false impressions to the jury affecting the element of intent.

### 2. Rule 404(b) analysis

Next, McAvoy argues that even if he opened the door to the admission of the Rule 404(b) evidence, the district court did not undertake the proper analysis to determine its admissibility. In making his argument, McAvoy cites to the district court's language in its initial decision to deny the State's motion in limine. The district court stated, "This is a pure 403, not 404(b) because it is clearly relevant. It's absolutely relevant . . . . So it's really [an Idaho Rule of Evidence] 403 analysis." McAvoy argues the district court should have first determined the noncharacter issue--intent, knowledge, motive, lack of mistake, or otherwise--to which the evidence was relevant.

As noted above, in determining the admissibility of Rule 404(b) evidence, a court must find that it is both relevant and that the probative value outweighs any unfair prejudice to the defendant. *Grist*, 147 Idaho at 52, 205 P.3d at 1188. This Rule 404(b) analysis may be described as determining relevance under Idaho Rule of Evidence 401, *see State v. Alsanea*, 138 Idaho 733, 739, 69 P.3d 153, 159 (Ct. App. 2003) (defining relevancy under Rule 404(b) using Rule 401), and then undertaking a weighing analysis under Idaho Rule of Evidence 403, *see State v. Pokorney*, 149 Idaho 459, 465, 235 P.3d 409, 415 (Ct. App. 2010) (defining the

weighing analysis under Rule 404(b) in terms of Rule 403). Because Rule 404(b) encompasses both Rules 401 and 403, in relation to a specific type of evidence, discussion of either of those rules is congruent with a proper Rule 404(b) analysis.

Turning to this case, McAvoy is correct that in its initial ruling the district court glossed over the relevancy determination and went directly into a discussion of Rule 403. Still, a discussion of Rule 403 was entirely appropriate, as the court was required to weigh the probative value against the unfair prejudice. Also, when the State renewed its motion, the district court took care to explain why it was, at that time, going to allow the evidence in. The district court first summarized the portions of cross-examination given above and then went on to state:

> The reason I think that's important is that that's implying that he indicated that this was not intentional when, in fact, we know that that's not the case. In addition, because there's inquiry as to the intention--the intentional nature of the [first case] video, it appears to me that that opens the door for the State to bring in the fact that, as to his excuse for the [first case] videos, the fact that they found additional videos, and the fact that he has admitted to the essence, and I'm not going to allow [the prosecutor] to say he's pled guilty, but she can certainly inquire as to--she can certainly present appropriate evidence of the fact he's admitted to the [first case] video, that it was intentional, and that it was for sexual purposes.
>
> In addition to that, there's quite a lot of discussion about whether there were other images on the video. And in fact . . . at this time, we are just speaking of just one event in July of 2008? Yes.[2]
>
> Now, the reason that's important is that we know that there's many more events than the July 2, 2008 event. And I think, at this point, the State is entitled to bring that out. It really becomes apparent when you direct him to the search warrant affidavit. . . . [The district court recounted the cross-examination of Detective Larsen regarding his involvement in child pornography cases and the search warrant]
>
> Now, the reason that's significant to me is, first, if you read the affidavit, the affidavit did not say anything about other child porn. It simply relates [the detective's] experience with regard to pornography. Furthermore, . . . the search warrant was executed at a time when the thrust of the search warrant was because of video voyeurism. The thrust of the search warrant had nothing to do with child pornography.
>
> And in my view, that's opened up the door for the State to bring in, really, what this search warrant was about. It was about video voyeurism, and there are three charges in this case that remain, one of those is video voyeurism. So, I am going to allow it in, because I'll find that the videotaping of [victim in first case] was intentional, but it--that was originally denied by the defendant and the State's

---

[2] July 2, 2008, was the date of the video recording involving the sixteen-year-old victim.

entitled to show that it was originally denied, and go into the story that was told to the officer. I also find that the other [first case] videos will come in.

Within this discussion, the district court undertook to explain the evidence in relation to the issue of intent and to prevent misleading the jury to believe the focus of the case was child pornography. While the district court did not use the word "relevant," or other forms thereof, it is evident that was the purpose of the discussion. Further, the relevancy was in regards to a purpose not prohibited in Rule 404(b): the use of the evidence to either prove intent or to correct false impression is for a purpose other than to show criminal propensity.

Additionally, the district court spoke directly on the renewed Rule 404(b) motion to the limited purposes of the evidence and the weighing analysis of Rule 403:

Now, what I intend to do is tell the jury that the evidence--after this has been introduced--has been introduced for the purpose of showing the defendant committed crimes and acts other than that for which he is on trial. Such evidence, if believed, is not to be considered by you to prove the defendant's character or that the defendant has a disposition to commit crimes. Such evidence may be considered by you only for the limited purpose of proving the defendant's intent, preparation, plan, knowledge, or absence of mistake or accident.

Because it's very clear, from the overall cross-examination, that the argument is made that there was only one image on this computer, and I've already heard what the argument's going to be is that it was immediately deleted. And it seems to me the State's entitled to show that there was more than one image. There was only one image of this particular victim, and she is the only one who is underage.

But the thrust of this case is not just about her age, it's about video voyeurism, and I think the State's entitled to combat the--or to introduce evidence, at this point, because I do find that it's relevant, and I do not find that the relevance is substantially outweighed by an undue prejudice to the defendant.

The district court was well aware of the required analysis under Rule 404(b) and made findings of both relevance and probative value versus unfair prejudice. We find no error in the district court's analysis.

### 3.      Admission of the 404(b) evidence

Finally, McAvoy argues that even if the district court undertook a proper analysis, it erred in allowing the 404(b) evidence from the first case to be admitted. We review the relevancy determination de novo and a determination that the probative value outweighs the unfair prejudice for an abuse of discretion. *Parmer*, 147 Idaho at 214, 207 P.3d at 190.

### a. Relevancy

McAvoy argues the evidence from the first case is too dissimilar to be used in the second case and that the evidence was relevant only to show criminal propensity. He points to differences such as McAvoy's knowledge that the first victim would be using the tanning bed whereas he did not know the second victim would be using it; that there were multiple videos of the first victim and only one of the second victim; and that McAvoy admitted the retention of the videos of the first victim was intentional but consistently denied the same in regards to the second victim. The State responds the evidence from the first case was relevant to show intent because it corroborated forensic analyst testimony that certain files of the underage victim were downloaded and intentionally transferred to a second computer, where images of the first victim were found, before being deleted from the original computer. Therefore, the evidence contradicted any inference that capturing and saving the video of the second victim were accidental.

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. I.R.E. 401; *State v. Harvey*, 142 Idaho 527, 532, 129 P.3d 1276, 1281 (Ct. App. 2006). In the prosecution of a specific intent crime, which includes sexual battery of a minor and video voyeurism, intent is not always sufficiently at issue to allow admission of evidence of other crimes. *State v. Roach*, 109 Idaho 973, 974, 712 P.2d 674, 675 (Ct. App. 1985). Rather, the evidence of intent needed to convict may be manifested by the circumstances attending the act. *Id.* However, in sex crimes cases, evidence of other sex crimes with third persons is often admitted on the issue of intent and usually involves victims having the same status as the victim of the charged offense. *Id*. at 975, 712 P.2d at 676. In considering the probative value of the evidence, courts consider whether the acts are similar, the victims are the same or similar, and whether the defendant exhibited the same state of mind when committing the acts. *State v. Wood*, 126 Idaho 241, 246, 880 P.2d 771, 776 (Ct. App. 1994). Age difference between adult and child victims at the time of a defendant's alleged sexual misconduct does not render the evidence of prior bad acts irrelevant. *Cardell,* 132 Idaho at 220, 970 P.2d at 13.

We conclude the testimony and evidence from the first case was relevant to show McAvoy's intent in capturing and saving images of the victim in the second case. McAvoy admitted to setting up the motion-sensored camera. He asserted the purpose was not to record

the first or second victim, but to monitor his wife who was potentially suicidal and had other mental health issues. However, in the first case, he admitted that while capturing video of the first victim was not initially intentional, he purposefully saved the video clips he recorded and continued to both record and save additional videos thereafter. While he denied that any retention of the video recording of the second victim was purposeful, the images were found on the same computer as the retained videos at issue in the first case. Admitting the videos from the first case, showing that there were multiple recordings, and having a forensic analyst testify regarding that evidence all tend to show that any recording found of the underage victim in the second case was also intentionally saved.

We also find the events are similar in nature and kind, supporting both relevancy and probative value. Both recordings were made with the camera and recording system set up by McAvoy. The acts depicted in all of the videos are the victims' use of the tanning bed. Though the recording of the victim in the second case captured additional sexual acts by the victim, the other circumstances attending the recording are the same. To countervail the similarities, McAvoy points out differences between the evidence from the first case as compared to the evidence in the second. The dissimilarities McAvoy points to, however, bolster the conclusion that the videos from the first case are relevant for a purpose other than criminal propensity. First, whether he knew that the second victim would be using the tanning bed was a disputed fact; the State produced testimony tending to indicate that McAvoy was aware the underage victim would be using the tanning bed and recorded the activity despite McAvoy's consistent denial of such knowledge. Therefore, evidence from the first case was certainly relevant to show the capture of the video was intentional. Next, that there were multiple videos of the first victim and only one of the second victim may have actually strengthened McAvoy's argument that he lacked the requisite intent as opposed to making the evidence from the prior case irrelevant. Finally, it is not a sound argument to say that because McAvoy admitted the retention of the videos of the first victim was intentional but consistently denied the same in regards to the second victim, the prior evidence is irrelevant. For this argument, McAvoy relies only on his own testimony, a questionable position in light of the fact that the second case involved an underage victim with charges carrying the potential for more serious consequences.

The evidence from the first case tended to prove absence of mistake or accident, or to show McAvoy's intent. Therefore, the district court did not err in concluding the evidence was relevant.

### b. Unfair prejudice

Even if the evidence is relevant, the probative value of the evidence in relation to intent or lack of mistake or accident must outweigh the prejudice to the defendant. *Cardell*, 132 Idaho at 221, 970 P.2d at 13. In weighing the probative value against the unfair prejudice, evidence is not unfairly prejudicial simply because it is damaging to the defendant's case; evidence is unfairly prejudicial only when it suggests decision on an improper basis. *Pokorney*, 149 Idaho at 465, 235 P.3d at 415. In any weighing under Rules 403 or 404(b), both the quantity of other similar crimes and their temporal proximity to the crime being charged is relevant to the trial court's consideration. *Cooke v. State*, 149 Idaho 233, 241, 233 P.3d 164, 172 (Ct. App 2010). Also, in determining prejudice, it is important to note that prejudice resulting from improper admission of evidence is not easily cured by an instruction. *State v. Guinn*, 114 Idaho 30, 34, 752 P.2d 632, 637 (Ct. App. 1988); D. Craig Lewis, IDAHO TRIAL HANDBOOK § 13.8 (2d ed. 2005). The admission of unnecessary, inflammatory details of a prior crime may require reversal of a conviction even where a more restrained presentation would have been proper. *State v. Nichols*, 124 Idaho 651, 656, 862 P.2d 343, 348 (Ct. App. 1993).

McAvoy's stance for a defense was that he intentionally set up the video camera, that certain recordings were discovered on his computer that instigated an investigation (the content of which would be kept out because of Rule 404(b)), and that when he discovered the recording of the underage victim, captured while his family was on vacation, and that it was sexual in nature, he immediately deleted it. At the time the district court first denied the State's 404(b) motion, the defense also planned on calling a computer forensic analyst to testify that the video clips (segmented portions of a single recording) of the second victim were immediately deleted, hence the reason they were found in a "hidden file" with only a thumbnail. Without needing to engage in the whole technical discussion, McAvoy had evidence to combat the State's theory of the case that rather than deleting the video clips, the recording was actually transferred and saved to the hidden file. However, when McAvoy brought his intent to issue and left false impressions with the jury, the State, in fairness, was allowed to provide a full picture of intent and the full nature of McAvoy's actions. In light of the circumstances in which McAvoy opened the door,

12

the district court found the probative value of the evidence in the first case outweighed the prejudice to McAvoy. The record shows the district court acted within the bounds of its discretion.

Additionally, we note that after the district court ruled on the State's renewed Rule 404(b) motion and allowed evidence from the first case to come in, defense counsel and the prosecutor stipulated that the evidence introduced at trial would consist of relating seven prior recording dates of the first victim and publication of five video clips of the first victim--all from just one of the many recordings. The restrained presentation was adequate to go to the purpose of intent and, yet, kept out unnecessary repetition of inflammatory details in regards to the first case. Consequently, we conclude the admission of testimony and video clips from the first case shows no abuse of discretion.

**B.      Whether the Basis for Sentencing was Unconsitutional**

McAvoy asserts the district court violated his constitutional rights and abused its discretion in sentencing by punishing him for going to trial in the second case. He contends the district court punished him for trying to raise reasonable doubt regarding the evidence while making his closing arguments. In closing arguments, McAvoy advanced the possibility that his step-son, who was dating the underage victim at the time, may have colluded with the underage victim to make the video. The State argues in response that the district court recognized the difference between punishing a defendant for exercising a trial right and learning more about a defendant because he goes to trial, and did not impermissibly punish the defendant based on the knowledge learned from trial.

We exercise free review when determining whether constitutional rights have been violated in light of the facts of the individual case. *State v. Kellis*, 148 Idaho 812, 814, 229 P.3d 1174, 1176 (Ct. App. 2010). In sentencing, it is improper for a court to penalize a defendant for exercising his or her right to trial. *Id.* However, a court is not entirely prohibited from considering continued assertions of innocence as a factor in fashioning an appropriate sentence. *Id.* at 815, 229 P.3d at 1177. Rather, a court may properly consider a defendant's refusal to acknowledge guilt when evaluating the defendant's rehabilitation potential because acknowledgment of guilt is a critical first step toward rehabilitation. *Id.* Furthermore, this Court will consider statements made by a sentencing court within context and will look at the record as a whole. *State v. Murphy*, 133 Idaho 489, 494, 988 P.2d 715, 720 (Ct. App. 1999). For example,

13

in *Kellis*, the defendant argued his constitutional rights were violated during sentencing because the district court imposed harsher sentences based on the defendant's continued assertions of innocence after a guilty verdict by a jury. *Kellis,* 148 Idaho at 813-14, 229 P.3d at 1175-76. During sentencing, the district court stated among other things:

> I can't hold it against you, Mr. Kellis, that you took this case to trial. There are a number of statements in the presentence [report] that suggest that I hold it against you for exercising your constitutional right to testify. I don't think I can, as a judge, punish someone for the exercise of their constitutional rights. But what I do find offensive is that you have no remorse. You are not taking responsibility for the actions that you have been convicted of, and I can and do punish you for that.
> . . . .
> . . . I guess, given the fact that you have shown no remorse and have taken no responsibility, the easy question is whether I should impose a life sentence. I should impose a life sentence given that you haven't demonstrated any remorse and haven't taken responsibility for any of these offenses . . . .

*Id*. at 814, 229 P.3d at 1176. This Court concluded that, when placed in context, the district court's comments expressed concern in relation to whether the defendant was amenable to rehabilitation. *Id.* at 815-16, 229 P.3d at 1177-78. Though some of the district court's statements may have been problematic standing alone, when viewed in the context of the entire record, the district court permissibly took into account factors relevant to the defendant's prospects for rehabilitation. *Id.* at 816-17, 229 P.3d at 1178-79.

We conclude the district court in this case did not unconstitutionally punish McAvoy for exercising his right to trial. When reviewed in context, the comments McAvoy contends are problematic merely represent the district court's concerns with McAvoy's pattern of behavior over an extended period of time[3] and his lack of empathy for the victims in the two cases. The district court stated, "In looking at this, I don't believe in punishing somebody for going to trial, but the problem with going to trial is oftentimes I learn things about the crime and about the defendant that I would not otherwise have learned." The district court went on to speak of how the sister-in-law, the underage victim, and the alternate perpetrator (the step-son) had all been victimized in the case and how McAvoy appeared to have no emotional reaction to the hardship

---

[3] From the presentence report, the district court was aware that since 2006, when McAvoy first set up the motion-sensored camera, McAvoy's wife indicated she had found images of herself while sleeping nude taken by her husband, and a camera in the bathroom and near the hot tub that McAvoy was attempting to use to capture videos, and that she had confronted him on occasion about his behavior, which he consistently denied or minimized.

14

of the victims. The district court noted that although McAvoy expressed remorse for his victims, the district court did not find McAvoy credible on this account. The district court also discussed issues such as McAvoy's focus on the impact to himself, his controlling and rigid behavior and his need for treatment, which would be most effectively provided through commitment to an institution. Perhaps most importantly, the district court carefully explained why it was taking the recommendation from the State for the determinate portion of the sentence, but was going to extend the indeterminate portion of the sentences:

> Once you are released on parole, and, quite frankly, so long as you do the sex offender treatment while incarcerated, you will probably go on parole because you will be a model prisoner. So I have no doubt that you will go on parole.
> Once you are released, I want to make sure there's a parole officer who goes and checks on you because this behavior is so easily hidden, I want to make sure that you are on somebody's radar so that you don't go out and reoffend.
> So I'm not going to follow the indeterminate recommendation that was made by counsel. But that's the reason for it. I think the fixed portion is appropriate. I think that gives you plenty of time to think about what you did.
> Also in my opinion there is no rehabilitation until someone has a deterrent. In your case your wife's being upset with you was not a deterrent. Not a deterrent. So I think you need to know that if you do this behavior again, you are going back to prison. And the only way that that's going to happen is if you have it hanging over your head. I think it is the only way that you will be motivated to get the treatment that you clearly need.

We find it apparent that the district court did not impose the indeterminate portion of the sentence as punishment for McAvoy exercising his right to trial, but rather in context, because of his problematic behavior over a span of years and his lack of empathy for his victims. The district court spoke of the need for treatment through the structure and supervision of a correctional institution, and the presentence report indicated the same need. Some of the statements by the district court may seem be dubious when taken alone. However, it was permissible for the district court to consider facts it learned overall through trial, through the presentence report, and through its own assessment of credibility when determining how treatment and rehabilitation could be most effective for McAvoy and in fashioning an appropriate sentence in response to those considerations.

### III.

### CONCLUSION

McAvoy has failed to show any error by the district court in admitting Rule 404(b) prior bad act evidence in his trial. Additionally, McAvoy has not shown that the district court violated

his constitutional rights at sentencing. Therefore, we affirm the district court's judgments of conviction and sentences in both the first and second cases.

Judge LANSING and Judge MELANSON **CONCUR.**