# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 37512

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2012 Opinion No. 39 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: July 25, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| VANCE EVERETT THUMM, | ) | AMENDED OPINION |
| | ) | THE COURT'S PRIOR |
| Defendant-Appellant. | ) | UNPUBLISHED OPINION |
| | ) | DATED JULY 11, 2012 IS |
| | ) | HEREBY AMENDED FOR |
| | ) | THE PURPOSE OF |
| | ) | PUBLICATION |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Michael E. Wetherell, District Judge.

Judgment of conviction and unified sentence of forty years with a minimum period of confinement of fifteen years, for aggravated battery, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Eric D. Fredericksen, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Chief Judge

Vance Everett Thumm appeals from his conviction for aggravated battery with a persistent violator enhancement.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Thumm, Deven Ohls, and several other people attended an early morning party in a motel room that Thumm had rented.  At some point during the party Thumm attacked Ohls, striking him with a closed fist several times in the head.  Another person, Frankie Hughes, kicked Ohls and stabbed him in the buttock.  The attack continued for some time and, by the time it was over, Ohls had suffered significant bleeding, a concussion, two black eyes, a complex lip laceration, and a nasal fracture, in addition to the stab wound.

1

The State charged Thumm by information with aggravated battery and a persistent violator sentencing enhancement. Three others, including Paris Davis, Thumm's girlfriend, were also charged in connection with the attack on Ohls. Prior to trial, the State filed multiple separate notices of intent to introduce evidence at trial pursuant to Idaho Rule of Evidence 404(b). In its first notice, the State intended to offer evidence that Mr. Thumm was a member of the Severely Violent Criminal (SVC) gang and the gang's purported modus operandi in attacking others as impeachment evidence in the event Thumm offered evidence of a peaceful nature. The notice also sought to offer testimony of a prior attack and beating alleged to have been committed by Thumm and other SVC gang members. In addition, the State filed a motion for pretrial ruling regarding the admissibility of evidence, asking the district court to permit it to introduce evidence that Davis and Thumm "are either members or close associates of the Severely Violent Criminal prison/street gang and the tenets of that gang are self-protection, insubordination to authority, violence, and dishonesty."

In regard to the I.R.E. 404(b) evidence of the prior altercation involving Thumm, the district court concluded that this "evidence would be more prejudicial than probative if issues with regard to self-defense or mistake or accident or another of that nature were not raised in the case and the Court would not allow it to be used." Addressing the State's motion for pretrial ruling on the gang connections of Thumm and Davis, the district court ruled that "this is admissible evidence for the purposes of impeachment should any members of the gang choose to testify and provide information related to alibi or other factors since it goes directly to the credibility of the witnesses." The district court further stated that the "name of the gang involved here will not be used, but the State may make reference to the fact if the testimony is given that they are a member of a gang and can impeach on that basis if they meet the criteria set forth in the *Abel* case."[1]

After a four-day consolidated trial in which Thumm and Davis were tried for their respective charges, the jury found Thumm guilty of aggravated battery and of being a persistent violator. Thumm was sentenced to a unified term of forty years, with fifteen years determinate. Thumm timely appealed from the district court's judgment of conviction. He also filed a motion for reconsideration of sentence, which was denied by the district court.

---

[1] *United States v. Abel*, 469 U.S. 45 (1984).

## II.

## DISCUSSION

### A. Motion for Mistrial

Thumm first contends that the district court committed reversible error by denying his motion for mistrial after a State's witness, Frankie Hughes, purportedly referenced Thumm's alleged gang affiliation. The State contends that the district court never made a ruling regarding the State's use of gang-affiliation evidence in its case-in-chief and, therefore, no prosecutorial error occurred. The State also argues, in the alternative, that none of the witnesses' statements revealed any gang affiliation.

In criminal cases, motions for mistrial are governed by Idaho Criminal Rule 29.1. A "mistrial may be declared upon motion of the defendant, when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial." I.C.R. 29.1(a). Our standard for reviewing a district court's denial of a motion for mistrial is well established:

> The question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer. The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*State v. Urquhart*, 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct. App. 1983). This error will be deemed harmless if the appellate court is able to declare, beyond a reasonable doubt, that there was no reasonable possibility that the event complained of contributed to the conviction. *State v. Morgan*, 144 Idaho 861, 863-64, 172 P.3d 1136, 1138-39 (Ct. App. 2007).

Prior to trial, the district court ruled that evidence of Thumm's gang affiliation was "admissible evidence for the purposes of impeachment should any members of the gang choose to testify and provide information related to alibi or other factors since it does go directly to the credibility of the witnesses." The district court further ruled that the "name of the gang involved here will not be used, but the State may make reference to the fact if the testimony is given that

3

they are a member of a gang and can impeach on that basis if they meet the criteria set forth in the *Abel* case."

At trial, during the State's direct examination of Hughes, the following exchange took place:

| | |
|---|---|
| State: | Did his [Thumm's] demeanor change at some point? |
| Hughes: | Yes. |
| State: | How did it change? |
| Hughes: | At some point when I was just sitting over by the sink, I was just sitting there and that's when, you know, I heard bits and pieces of their conversation. And, you know, I heard Deven saying something about knowing someone from one of [Thumm]'s friends, you know, that he hangs out with and -- |
| State: | Then what happened? |
| Hughes: | [Thumm] said, oh, yeah, like, he said, yeah, that's my homie. She's from my hood. And then waives his hand across his neck and shows his neck.[2] |

Immediately after Hughes' statement, defense counsel for Davis asked to be heard outside the presence of the jury. The State later described what occurred during the unrecorded side bar:

> Your Honor, the State's recollection of that was the State had asked a question. [Hughes] had responded to that question. There was an objection. We approached. During that side bar, the State's recollection was that both defense counsel were concerned about the reference to the hood or homie and that tattoo.

After Hughes finished testifying, defense counsel made a motion for mistrial, stating: "I believe that the statements made by Mr. Hughes about the homies and the hood and the reference to his tattoos clearly prejudices the jury and is against your court order. I am going to ask for a mistrial." The district court denied the motion, explaining: "The Court will point out that I have cases all the time in which there are not gang members in which the terms homie and hood are used as common slang. They do not always refer to gang-related activities. Nor do tattoos."

### 1. The district court's ruling

As a threshold matter, we note that the State's argument that the district court never ruled in regard to the State's use of gang-related evidence in its case-in-chief is unavailing. "This Court will not review a trial court's alleged error on appeal unless the record discloses an adverse ruling which forms the basis for the assignment of error." *State v. Yakovac*, 145 Idaho 437, 442,

---

[2] Thumm has the letters "SVC" tattooed on his neck.

4

180 P.3d 476, 481 (2008) (internal quotations omitted); *see State v. Pickens*, 148 Idaho 554, 557, 224 P.3d 1143, 1146 (Ct. App. 2010). It is clear from the record that the district court ruled that the evidence would be admissible only for impeachment purposes and not in the State's case-in-chief. Prior to trial, the State filed a notice of intent to use I.R.E. 404(b) evidence, seeking to introduce evidence of Thumm's gang affiliation, the motives of that gang, and the gang's modus operandi in attacking others. The notice stated in regard to the gang-related evidence: "The State would not attempt to elicit this information in its case in chief, but feels it is highly relevant to rebut any evidence presented of [Thumm's] peaceable character or to rebut a claim of self defense." At a pretrial hearing, the State informed the district court that it sought to admit the evidence for impeachment or rebuttal purposes, and did not take issue with defense counsel's assertion that "I understand that counsel [the State] plans only to use this as a part of rebuttal or impeachment." Moreover, the district court clearly limited the use of the evidence in its ruling:

> I think counsel are aware of the Court's position on the 404(b) evidence. This evidence would be more prejudicial than probative if issues with regard to self-defense or mistake or accident or anything of that nature were not raised in the case and the Court would not allow it to be used.
>     If, however, the defendant asserts self-defense, a peaceable disposition, a mistake or an accidental harm, then the probative value of these statements or these prior incidents become significantly elevated in the case for purposes of rebuttal. And the Court then would weigh differently under Rule 403. And the Court at that point would find the probative value does not outweigh the prejudicial effect. All evidence has some prejudicial effect. That's the idea of the evidence on both sides.
>     But the Court's general rule is that. Somebody raises the issue that an attack was self-defense or they've got a peaceable nature or that this was an accidental occurrence, it wasn't an intentional attack, then it comes in on rebuttal.

The district court had an opportunity to reiterate its ruling when the State later sought to admit similar evidence in response to Thumm's defense of alibi. The district court stated: "[The] Court has previously ruled that this [is] admissible evidence for the purposes of impeachment should any members of the gang choose to testify and provide information related to alibi or other factors since it goes directly to the credibility of the witnesses." From the discussion between the parties and the district court regarding the admissibility of the gang-related evidence, it is apparent that the district court ruled that the State could offer evidence of Thumm's alleged gang affiliation for purposes of impeachment or rebuttal and only if issues of alibi, self-defense, accident or mistake, or peaceful disposition arose.

### 2.  Prosecutorial misconduct and harmless error

As the district court recognized, Hughes' passing reference to "my homie" and the "hood," and Thumm's gesture to his neck are not necessarily indicative of gang affiliation. The prosecutor's questions did not call for any gang-related information, and the statements offered by Hughes did not reference any gang names, any person's gang affiliation, or any other information subject to the district court's pre-trial ruling. Therefore, the statements did not constitute prosecutorial error or a violation of the court's orders.

Moreover, even if we were to assume, arguendo, that Hughes' testimony constituted prosecutorial error, the trial court's refusal to grant a mistrial did not constitute reversible error. Hughes' brief reference was not so prejudicial as to overwhelm all the admissible evidence that he was guilty of aggravated battery such that Hughes' testimony can be said to have contributed to the verdict in any meaningful way. The district court offered to give a limiting instruction if the parties felt it necessary, but neither party ever requested such an instruction. Thumm does not even attempt to substantiate any assertion that the verdict would have been different absent Hughes' reference. Thus, the district court did not commit reversible error by denying Thumm's motion for a mistrial.

### B.  Testimony of Chris Smith

Thumm next argues that the district court committed reversible error by ruling that if the defense called Chris Smith to testify, then the State would be permitted to impeach his testimony with information that both Thumm and Smith were alleged gang members. The State argues that Thumm has failed to preserve his argument for appeal because the district court never ruled on the matter and, in the alternative, Thumm has failed to show the district court abused its discretion.

"It is well settled that in order for an issue to be raised on appeal, the record must reveal an adverse ruling that forms the basis for assignment of error." *State v. Huntsman*, 146 Idaho 580, 199 P.3d 155 (Ct. App. 2008) (citing *State v. Amerson*, 129 Idaho 395, 401, 925 P.2d 399, 405 (Ct. App. 1996)). *See also Pickens*, 148 Idaho at 557, 224 P.3d at 1146.

On the morning of the trial's fourth day, outside the presence of the jury, defense counsel brought up the issue of evidence of gang association used for impeachment purposes. This time, the issue was brought up in regard to Chris Smith, who had previously pled guilty to stabbing Ohls during the altercation. Smith had reported to police that Thumm was not involved in the

6

attack on Ohls and, presumably, the defense wanted to call him to testify in a similar fashion at trial. Defense counsel stated:

> Now, he has--he is a documented gang member from California, not of a specific gang that's at issue here, but there is still that general overlying thing that people will cover for each other. So I'm interested in what the Court's ruling would be and what parameters I have if I call Chris Smith to the stand whether it is going to open the door.

Thumm argues that this statement constituted a specific request for a ruling from the court as to whether Smith could be impeached by the State using evidence of prior gang associations of Smith and Thumm, even though Smith purportedly did not have the same gang affiliation as Thumm. The district court stated that putting Smith on the stand would likely mean the State would be able to bring in Smith's gang affiliation in regard to credibility. The State then interjected, stating for the record what evidence it would provide of the association of Smith and Thumm. In response, the district court stated: "And that would become relevant and the relevancy outweighs the prejudicial [effect]." Lastly, the district court also stated:

> So that would be my response. I don't want to mousetrap anybody. But I understand, [defense counsel], you may want to call them, but you can't call them and expect them to be treated as though they were a citizen off the street with no association, no past, no history. The State gets to bring that up.

The district court clearly communicated to the parties that if Smith were to testify, the State would be permitted to bring in its evidence of the association and gang affiliation. As such, an adverse ruling exists to which Thumm has assigned error; and, therefore, the issue is properly before this Court.

Thumm argues that the district court erred in ruling that if Smith were to testify, the State would be allowed to impeach based upon Smith's gang associations. Thumm relies on *United States v. Abel*, 469 U.S. 45 (1984), where the Supreme Court held that evidence of a witness's membership in the same gang as the defendant was sufficiently probative of possible bias towards the defendant to warrant its admission into evidence. *Id.* at 49. According to Thumm, in order to impeach an individual for bias based upon his affiliation with a certain group, the parties must have "common membership in an organization." Thumm argues that he and Smith were members of different gangs and, thus, the district court committed error when it ruled Smith's and Thumm's prior associations were admissible.

7

While the *Abel* Court held that common membership in a gang could be used for impeachment as evidence of bias, it did not hold that membership in different gangs required the opposite finding. *See id.* at 52, 54-55. Rather, the Court reaffirmed the proposition that the district court has the *discretion* to determine admissibility of evidence showing bias. *See id.* at 54. "Thus it was within the district court's discretion to admit the testimony, and the Court of Appeals was wrong in concluding otherwise." *Id.* at 49. *Abel* does not foreclose the possibility that evidence of a person's prior association is admissible impeachment evidence for purposes of showing bias. The evidence may be admissible even if the witness and defendant are members of different gangs, provided that the evidence is relevant and the probative value is not substantially outweighed by the risk of unfair prejudice. Therefore, *Abel* does not dictate a limitation only to persons of the same gang affiliation, regardless of other gang-related affiliation, and we must review the district court's ruling under our traditional standards.

Whether evidence is relevant under I.R.E. 401 is an issue of law which we review de novo. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993); *State v. Sanchez*, 147 Idaho 521, 525, 211 P.3d 130, 134 (Ct. App. 2009). A lower court's determination under I.R.E. 403 will not be disturbed on appeal unless it is shown to be an abuse of discretion. *State v. Enno*, 119 Idaho 392, 406, 807 P.2d 610, 624 (1991); *State v. Clark*, 115 Idaho 1056, 1059, 772 P.2d 263, 266 (Ct. App. 1989). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

The State outlined for the district court its evidence regarding the prior association of Smith and Thumm:

> [J]ust so the record is clear. We do have information via [Hughes] that Mr. Smith and Mr. Thumm were associates for a couple of months. Hung out together. We also have objective information, which includes a surveillance video that shows [Smith, Hughes, and Thumm] all together. And it shows both [Smith] and [Hughes] essentially trying to keep people away from [Thumm] while he engages in another beating.
> And so I think that that is part of the gang mentality of backing each other. And I just want to let you know for the record the State has that information, and we would put proper proof of that information.

The district court determined that the evidence "would become relevant and the relevancy outweighs . . . the prejudicial effect given the nature of the charges here in terms of impeaching those witnesses."[3]

Evidence that Smith and Thumm associated with each other bears directly on Smith's credibility and is therefore relevant. Given that Smith's version of events would have exculpated Thumm, Smith's credibility was directly at issue. The evidence that Smith and Thumm were closely associated, and that their respective gang memberships were a component of that affiliation, was relevant. Also relevant was evidence that it was a tenet of the gangs that they cover for each other, including lying on behalf of other gang members. As the Supreme Court has noted, "Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest." *Abel*, 469 U.S. at 52. Generally, "Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *Id.* The district court did not err in determining that the challenged evidence was relevant as impeachment evidence for the purpose of showing bias. Moreover, Thumm has failed to demonstrate that the district court abused its discretion in finding that the probative value of the evidence was not outweighed by unfair prejudice. Consequently, we cannot say that the district court abused its discretion by ruling that evidence of the association and gang membership of Smith and Thumm was admissible should Smith be called to testify.

## C. Fifth Amendment Violations

Thumm next asserts that the State used his pre-*Miranda*[4] silence as evidence of his guilt in violation of his right to remain silent, as protected by the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, § 13 of the Idaho Constitution. The State contends that it did not utilize Thumm's silence to infer guilt and, in the alternative, Thumm has failed to

---

[3] We do not address the State's claimed evidence of Smith's association with Thumm in regard to a prior beating because Thumm has not challenged the admissibility of that evidence, but has challenged only the district court's ruling that Thumm and Smith's gang affiliations could be used for impeachment.

[4] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

show fundamental error. No objection was raised at trial in regard to the statements Thumm alleges violated his constitutional rights.

This Court will not address an issue not preserved for appeal by an objection in the trial court. *State v. Rozajewski*, 130 Idaho 644, 645, 945 P.2d 1390, 1391 (Ct. App. 1997). However, we may consider fundamental error in a criminal case, even though no objection was made at trial. *Id*. Fundamental error has been defined as error which goes to the foundation or basis of a defendant's rights, goes to the foundation of the case, or takes from the defendant a right which was essential to his or her defense and which no court could or ought to permit to be waived. *State v. Babb*, 125 Idaho 934, 940, 877 P.2d 905, 911 (1994).

In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court clarified that the fundamental error doctrine applied where an alleged error was not followed by a contemporaneous objection:

> Such review includes a three-prong inquiry wherein the defendant bears the burden of persuading the appellate court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) plainly exists (without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision); and (3) was not harmless. If the defendant persuades the appellate court that the complained of error satisfies this three-prong inquiry, then the appellate court shall vacate and remand.

*Perry*, 150 Idaho at 228, 245 P.3d at 980.

During the State's redirect examination of the arresting officer, the following exchange occurred:

| | |
|---|---|
| State: | What, if anything, did [Thumm] say in response to your statements about the warrant? Did he say anything at all? |
| Officer: | I don't recall. We didn't have much conversation in regards to the fact that he was being arrested on the warrant. |
| State: | Okay. What, if anything, did he do to acknowledge whether or not he had heard you? |
| Officer: | He invoked his rights a couple times stating I got rights. |
| State: | And let me interrupt you. I guess, what I'm asking you though is, did he at any point [in] time ask you what the warrant was for himself or ask for clarification on the warrant? |
| Officer: | I don't recall if he did. I remember him knowing that he was instructed what the warrant was. |

While Thumm's allegation is constitutional in nature, the Idaho Supreme Court has held that "the constitutional right against self-incrimination is not absolute . . . and applies only when the silence is used solely for the purpose of implying guilt." *State v. Ellington*, 151 Idaho 53, 61, 253 P.3d 727, 735 (2011) (quoting *State v. Moore*, 131 Idaho 814, 821, 965 P.2d 174, 181 (1998)). In this case, Thumm made no objection at the time of the exchange and, thus, the precise purpose of the State's questioning was never expressly stated for the record. However, from the record it is clear that the prosecutor was not attempting to elicit information regarding Thumm's pre-*Miranda* silence. Rather, it is apparent that the officer's reference to Thumm's statements was merely an unsolicited "blurt." Moreover, it is not clear that the jury would have implied guilt from the statement. Therefore, the alleged error does not plainly exist. And even if the error was plain, given the totality of the testimony and evidence at trial, the error could not have affected the outcome of the trial proceedings. Thus, any error was harmless, and the officer's testimony did not constitute fundamental or reversible error.

## D. Prosecutorial Misconduct

Thumm also asserts that due to multiple acts of prosecutorial misconduct, he was denied his constitutional right to a fair trial and his right to remain silent was violated. He argues, specifically, that during closing arguments: (1) the prosecutor improperly appealed to the jury's passions and prejudices by asking the jury to picture themselves in the position of the victim; (2) the prosecutor used Thumm's pre-*Miranda* silence to imply his guilt; and (3) the prosecutor misstated the reasonable doubt standard, enabling the jury to convict Thumm with a lesser evidentiary standard. Thumm did not object to the prosecutor's comments.

Thumm made no contemporaneous objection to the prosecutor's comments at trial. In *Perry*, the Idaho Supreme Court clarified the fundamental error doctrine as it applies to allegations of prosecutorial misconduct. If the alleged misconduct was not followed by a contemporaneous objection, an appellate court should reverse when a defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) the error is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) the error affected the outcome of the trial proceedings. *Id*. at 226, 245 P.3d at 978.

While our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, he or she is nevertheless expected and

required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. A fair trial is not necessarily a perfect trial. *Id.*

### 1. Impermissible appeal to jury's emotions

Thumm first argues that during the State's closing argument, the prosecutor improperly attempted to get the jurors to act upon their fears by having them imagine themselves as the victim. Closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). Its purpose is to enlighten the jury and to help the jurors remember and interpret the evidence. *Id.*; *State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct. App. 1991). Both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *Phillips*, 144 Idaho at 86, 156 P.3d at 587; *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003).

Appeals to emotion, passion, or prejudice of the jury through the use of inflammatory tactics are impermissible. *Phillips*, 144 Idaho at 87, 156 P.3d at 588. *See also Raudebaugh*, 124 Idaho at 769, 864 P.2d at 607; *State v. Pecor*, 132 Idaho 359, 367, 972 P.2d 737, 745 (Ct. App. 1998). In this case, the prosecutor began his closing statement:

> So imagine you're Deven Ohls. You pick up your girlfriend to go [to] the bar. You have a few drinks. You pick up another friend that you know. You go to a hotel for an after party. You go to drink alcohol. You go to hang out with friends. While you're there, you notice you're one and they seem to be four. While you are there things appear okay. Things start to get a little bit hot maybe. All of a sudden out of the blue you're standing, there's one behind you. Two in front of you. You can feel it coming. And sure enough it does. And Vance Thumm takes the first blow.

We have previously held that urging the jury to find a defendant guilty based on emotions is improper. In *State v. Gross*, 146 Idaho 15, 20, 189 P.3d 477, 482 (Ct. App. 2008), the prosecutor made comments in the closing argument of a DUI prosecution that Gross was driving "in the opposite lane of traffic while under the influence of alcohol. Imagine yourself coming down that other lane." The prosecutor also stated: "My client [the State] wants to protect you in case you're the person that happens to be coming down that lane. My client wants to keep you off the front page of that newspaper." *Id.* We found these comments were improper because

"the prosecutor did not ask the jury to rely on the evidence but, rather, urged the jury to find Gross guilty of the DUI charge based on a fear of being the victim of a drinking and driving accident serious enough to be on the front page of a newspaper." *Id*. at 21, 189 P.3d 483.

The prosecutor's comments in this case invited the jury to put themselves in the position of Deven Ohls, more so as a descriptive technique than as an appeal to the jury's emotions. The statement did not ask the jury to convict out of fear or protection of society. Nonetheless, asking a jury to put themselves in the victim's position runs the significant risk of emotional attachment to the victim.

However, even though the prosecutor's statements may have been improper, they do not rise to the level of fundamental error. With respect to this second prong of the *Perry* test, the error "must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision . . . ." *Perry*, 150 Idaho at 226, 245 P.3d at 978. Although Thumm asserts error of a constitutional nature, the error does not "plainly exist" because counsel's failure to object very well could have been a tactical decision. In many cases, counsel's decision not to object may come from a desire to avoid undue attention to certain facts or comments. *See State v. Roles*, 122 Idaho 138, 147, 832 P.2d 311, 320 (Ct. App. 1992) ("Trial counsel . . . may well have made the tactical decision not to object and move to strike, so as not to draw further attention to the passing reference."); *In re Davis*, 101 P.3d 1, 39 (Wash. 2004) ("Lawyers do not commonly object during closing argument 'absent egregious misstatements.' A decision not to object during summation is within the wide range of permissible professional legal conduct."). As it is entirely possible that counsel's failure to object was a tactical decision, and Thumm points to no evidence in the record that indicates otherwise. As noted, the prosecutor's statement may well have been perceived as an attempt to describe the scene--albeit from the victim's perspective-- more than an appeal to convict based upon emotion. Thumm has failed to show the prosecutor's statement constituted clear and obvious error.

Moreover, even if we assumed error, we can conclude beyond a reasonable doubt that absent the prosecutor's comment, the outcome of the trial would have been the same. By closing arguments, the jury had already been exposed to graphic descriptions and photographs depicting the attack on Deven Ohls, and had heard descriptions of the attack from several witnesses. We are confident beyond a reasonable doubt that the jury, having heard and observed all such

13

evidence, would have convicted Thumm absent the prosecutor's comments. Therefore, Thumm has failed to show fundamental error.

### 2. Use of Thumm's pre-*Miranda* silence to imply guilt

Thumm contends that the State committed prosecutorial misconduct rising to the level of fundamental error during its rebuttal closing argument. Specifically, Thumm contends that the prosecutor erred by rhetorically asking why Thumm would leave the crime scene and "not stick around and tell police what happened." However, a review of the relevant portion of the State's rebuttal closing argument reveals that, in context, the prosecutor was not calling attention to Thumm's assertion of his right to silence, but was instead highlighting Thumm's immediate flight from the scene of the aggravated battery. The prosecutor stated:

> What other objective evidence? The other objective evidence is why would [Thumm] leave? That hotel room is in his name. If he did nothing wrong, if he is not going to get busted because the cops are coming because he committed this crime, why would you leave? He left because he knew exactly what he did.
>
> The police arrived within four minutes. Where was [Thumm]? Four minutes. Where was [Thumm]? Gone. Lickety-split. He is out. Because he ain't getting caught. But if he didn't do anything wrong, if you truly left and weren't even in the hotel room, maybe like Deven Ohls says, wouldn't you be going, hey, what happened? What's going on? No, that doesn't happen. He's gone. And he gets arrested, he gets arrested four days later.
>
> Why run if you're not guilty? Why not stick around and tell police what happened? Why get rid of clothes if it's not evidence? The clothes never show up. See, this is objective evidence, you know what, nobody is putting a spin on this, but it is telling you exactly who to believe.

In context, the prosecutor did not mention Thumm's silence to imply guilt, but rather made a passing reference to it while discussing Thumm's immediate flight from the crime scene. "Evidence of flight, escape, or failure to appear on the part of a defendant is often identified as relevant to demonstrate consciousness of guilt." *State v. Pokorney*, 149 Idaho 459, 463, 235 P.3d 409, 413 (Ct. App. 2010). As there was evidence in the record that Thumm had fled rapidly from the crime scene, there was nothing improper about the prosecutor using that evidence to imply Thumm's consciousness of guilt. *See State v. Norton*, 151 Idaho 176, 187, 254 P.3d 77, 89 (Ct. App. 2011) ("The prosecutor was free to argue the evidence and any reasonable inferences to be drawn from that evidence."). That the prosecutor made a statement with a passing reference to "telling" the police what happened does not rise to the level of fundamental error.

### 3. Reasonable doubt standard

Thumm also contends that the prosecutor committed misconduct by misstating the reasonable doubt standard during his closing argument. Specifically, Thumm contends that the prosecutor committed misconduct by asking the jury to consider what they felt in their "gut," and by discussing what is "reasonable" in the reasonable doubt standard in terms of everyday decisions. Thumm did not object to any of the statements.

In *State v. Carson*, 151 Idaho 713, 264 P.3d 54 (2011), Carson contended that unobjected-to comments by the prosecutor during her closing argument, if followed by the jury, would have permitted it to convict him upon proof that was less than beyond a reasonable doubt. *Id*. at 718, 264 P.3d at 59. The Idaho Supreme Court found no error, reasoning that, even if the prosecutor's comments were improper, the district court properly instructed the jury on reasonable doubt. *Id.* The Court presumed that the jury followed the jury instructions given by the trial court in reaching its verdict, and there was no indication that the jury did not follow the court's instructions. *Id.*

The same reasoning as *Carson* applies to the present case, and leads to the same result. The district court instructed the jury on the meaning of reasonable doubt. The district court also instructed the jury that: (1) it was the court's duty to instruct them as to the law; (2) they must follow all the rules as explained to them by the court; and (3) if anyone stated a rule of law differently from what the court told them, the jury must follow the court's instruction. We presume that the jury followed the jury instructions given by the trial court in reaching its verdict. *Id*. Further, as in *Carson*, there is no indication that the jury did not follow the district court's instructions. Therefore, Thumm's argument fails.

## E. Cumulative Error

Lastly, Thumm asserts that under the doctrine of cumulative error, the accumulation of errors that occurred during trial is, in the aggregate, sufficient to warrant a new trial. The cumulative error doctrine refers to an accumulation of irregularities, each by itself might be harmless, but when aggregated, show the absence of a fair trial in contravention of the defendant's right to due process. *Moore*, 131 Idaho at 823, 965 P.2d at 183. The presence of errors alone, however, does not require the reversal of a conviction because, under due process, a defendant is entitled to a fair trial, not an error-free trial. *Id.* Moreover, "it is well-established that alleged errors at trial, that are not followed by a contemporaneous objection, will not be

15

considered under the cumulative error doctrine unless said errors are found to pass the threshold analysis under our fundamental error doctrine." *Perry*, 150 Idaho at 230, 245 P.3d at 982. A necessary predicate to application of the cumulative error doctrine is a finding of more than one error. *State v. Hawkins*, 131 Idaho 396, 407, 958 P.2d 22, 33 (Ct. App. 1998). Thumm has failed to show errors sufficient to invoke the doctrine of cumulative error.

## III.

## CONCLUSION

Thumm has failed to show that the district court committed reversible error when it denied his motion for mistrial. The district court did not err in its ruling regarding impeachment of Smith. Thumm has also failed to show that the other alleged, unobjected-to errors rose to the level of fundamental error. Therefore, Thumm's judgment of conviction and sentence for aggravated battery with a persistent violator enhancement is affirmed.

Judge LANSING and Judge MELANSON **CONCUR.**