**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 44985**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed:  June 21, 2018 |
| Plaintiff-Respondent, | ) |
| | ) Karel A. Lehrman, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| ROBERT SNOW DERRICK, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County.  Hon. Randy J. Stoker, District Judge.

Judgment of conviction for felony injury to a child, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Jenevieve C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

---

GUTIERREZ, Judge

Robert Snow Derrick appeals from his judgment of conviction for felony injury to a child.  Derrick argues that the prosecutor committed misconduct constituting fundamental error and that the district court abused its discretion in admitting an audio recording of Derrick speaking with a police officer.  For the following reasons, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

In the midst of a domestic disturbance, Derrick allegedly struck his wife, which motivated his stepson, R.B., to pick up a kitchen knife.  However, R.B. quickly dropped the knife. After R.B. had already dropped the knife and started to run away, Derrick grabbed R.B., placed him in a chokehold, punched him in the stomach, and threw him out onto the back patio.

1

The next day, R.B. went to the hospital due to his stomach hurting; he was diagnosed with a lacerated spleen.

Derrick was charged by information with felony injury to a child, Idaho Code § 18-1501(1), and domestic battery in the presence of a child, I.C. §§ 18-918(3), 18-903(a) and/or (b), 18-918(4). Derrick pled not guilty. The case proceeded to a jury trial, where Derrick denied that he ever struck his wife or punched R.B. in the stomach, suggesting that the lacerated spleen was caused by a fight between R.B. and other family members. Derrick was found guilty of felony injury to a child, but not domestic battery in the presence of a child. The district court entered a judgment of conviction for felony injury to a child and sentenced Derrick to a unified sentence of ten years, with a minimum period of confinement of two years. Derrick timely appealed.

## II.

## ANALYSIS

### A. Prosecutorial Misconduct

At the jury instruction conference, the prosecutor suggested that the phrase "could cause injury" or the word "potential" should be used in the definition of the term "willfully," rather than the proper phrase: *likely* to result in injury or harm or is likely to endanger the person, health, safety or well-being of the child. The district court instructed the jury using the proper definition of "willfully." However, during closing argument, the prosecutor made the following statements:

> Look at the definition of willfully. A reasonable person would know the act is likely, could, potentially, pick the word you like, but the court has used likely to result in injury or harm or is likely to endanger the person, health, safety, or well being of the child. . . .
>     . . . Given these facts, Robert Derrick had reason to know that, as an adult with his height, with his weight, if he punched [R.B.], a child who was shorter and weighs less than him, that if he punches [him] in the stomach, [R.B.'s] health or person likely or could be injured or endangered.
>     . . . .
>     Given all these facts, Robert Derrick had a reason to know that as an adult in a rage like he was at that time, if he punched [R.B.] in the stomach, [R.B.'s] health or person could likely be injured or endangered.

Derrick contends the prosecutor committed misconduct by misstating the law in her closing argument by telling the individual jurors that they could select and apply their own standard for purposes of the felony injury to a child charge. The State argues that, in context, the prosecutor did not urge the jury to convict on a lesser standard of proof. Moreover, the State argues that

2

Derrick has not shown fundamental error because the jury was properly instructed, and Idaho appellate courts are to presume that a jury follows the instructions it is given.

While our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, the prosecutor is nevertheless expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct, we must keep in mind the realities of trial. *Id.* A fair trial is not necessarily a perfect trial. *Id.*

Derrick made no contemporaneous objection to the prosecutor's alleged misstatement of the law at trial. In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court clarified the fundamental error doctrine as it applies to allegations of prosecutorial misconduct. If the alleged misconduct was not followed by a contemporaneous objection, an appellate court should reverse when the defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *Id.* at 226, 245 P.3d at 978.

It is prosecutorial misconduct for a prosecutor to misstate the law in closing arguments. *State v. Iverson*, 155 Idaho 766, 771, 316 P.3d 682, 687 (Ct. App. 2014). As reflected in their dictionary definitions, the terms "likely" and "potentially" have quite different meanings. The term "likely" means "of such a nature or so circumstanced as to make something probable." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1310 (1993). The term "potentially" means "in a potential or possible state or condition," with "possible" meaning "neither probable nor impossible." *Id.* at 1771, 1775. "Potentially" is, therefore, an easier standard for the State to prove, as it is less than "probable" while "likely" is equivalent to "probable." Even more problematic, though, is the prosecutor's remark "pick the word you like." The State must be cautious when explaining defined terms so as not to lower its burden. *State v. Coffin*, 146 Idaho 166, 169-71, 191 P.3d 244, 247-49 (Ct. App. 2008) (holding that it was error for the prosecutor to misstate the definition of "willfully" in closing argument). The prosecutor clearly misstated the law in this instance.

However, even if these statements were prosecutorial misconduct, they were not sufficiently prejudicial to constitute fundamental error. Prosecutorial misconduct during closing arguments will constitute fundamental error only if the comments were so egregious or

inflammatory that any consequent prejudice could not have been remedied by a ruling from the trial court informing the jury that the comments should be disregarded. *State v. Lankford*, 162 Idaho 477, 501-02, 399 P.3d 804, 828-29 (2017); *State v. Parker*, 157 Idaho 132, 146, 334 P.3d 806, 820 (2014). Here, the district court, in jury instruction number nine, informed the jury that if anyone stated a rule of law differently from how the court stated it, the jury was to follow the court's instruction. We presume that the jury followed the district court's instructions. *See State v. Kilby*, 130 Idaho 747, 751, 947 P.2d 420, 424 (Ct. App. 1997); *State v. Hudson*, 129 Idaho 478, 481, 927 P.2d 451, 454 (Ct. App. 1996). Given jury instruction number nine and the prosecutor's acknowledgment to the jury that the court had decided to use the word "likely," the prosecutor's passing reference to incorrect terminology was not so egregious or inflammatory that it would not have been cured by an instruction from the court.

Not only has Derrick failed to satisfy the third prong of the *Perry* analysis, but he also has failed to satisfy the second prong, which requires the defendant to show that the error "plainly exists (without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision)." *Perry*, 150 Idaho at 228, 245 P.3d at 980. When the complained-of prosecutorial misconduct occurs during closing argument, error rarely "plainly exists" because counsel's failure to object very well could have been a tactical decision. *State v. Thumm*, 153 Idaho 533, 543, 285 P.3d 348, 358 (Ct. App. 2012). Lawyers do not commonly object during closing argument absent egregious misstatements of the law. *In re Davis*, 101 P.3d 1, 39 (Wash. 2004). Because the prosecutor's comments were not so egregious that they could not have been cured by an instruction from the court and because Derrick's defense did not depend on the definition of "willfully," it is entirely possible that counsel's failure to object was a tactical decision. Derrick points to no evidence in the record that indicates otherwise.

After reviewing the record, we hold that Derrick has failed to satisfy the second and third prongs of the *Perry* analysis. Therefore, although the prosecutor's comments were a misstatement of the law, they do not constitute fundamental error warranting reversal.

**B.     Lack of Foundation for Admission of Audio Recording**

At trial, Derrick testified that he was nervous when talking with the officers directly after the incident. Derrick further testified that the door to the patio was open and that he did not have to open it, contrary to the testimony of his wife. When asked why the door was open, Derrick

replied, "Hot out. Didn't always close the door." After the defense rested, the prosecutor called a police officer who had previously testified for the State back to the stand for additional redirect examination on rebuttal. The following exchange occurred:

[Prosecutor]: And I just handed you what's been marked as State's Exhibit 9. Do you recognize that?
[Witness]: Yes.
[Prosecutor]: How is it that you recognize it?
[Witness]: I recently reviewed this audio disk and signed the back of the disk or the envelope that it's in.
[Prosecutor]: Are you in that audio?
[Witness]: No.
[Prosecutor]: Who's in that audio?
[Witness]: Mr. Derrick and [the officer].
[Prosecutor]: And when you came out to talk to Mr. Derrick, did you--you were recording as well?
[Witness]: Yes.
[Prosecutor]: Did you compare your audio with [the officer's]?
[Witness]: Not side by side, no.
[Prosecutor]: You both were recording at the same time?
[Witness]: Yes, we should have been.
[Prosecutor]: What is on--what is on this audio?
[Witness]: This is a conversation between Mr. Derrick and [the officer] while I was inside speaking with [Derrick's wife].
[Prosecutor]: Did you--did you recognize Mr. Derrick's voice on there?
[Witness]: Yes.
[Prosecutor]: Did you recognize [the officer's] voice on there?
[Witness]: Yes.
[Prosecutor]: And is that, I mean, from what you observed, is that an accurate copy of part of that conversation?
[Witness]: Yes.
[Prosecutor]: Your Honor, we'd move to admit State's Exhibit 9.
[Defense]: Objection, lack of foundation.
[Court]: In what way?
[Defense]: This is not--this is [the officer's] conversation, partial conversation. The State has said that they have recordings that overlap to some extent. I'm not sure he said these two overlap to some extent. I just don't think that the foundation for [the officer's] conversation can be laid second-handedly by [the witness].
[Court]: [Prosecutor], let me clarify one thing. This audio is not included in any of the ones we've heard?
[Prosecutor]: No, it's not.
[Court]: This is different.
[Prosecutor]: This is part of the extra stuff that was taken out, like the joking and talking about the weather and things like that.

5

| [Court]: | I will overrule the objection on foundation for this reason: The witness has testified that as to what this audio is. It purports to be statements of the defendant, which are certainly admissible. There's no indication of lack of accuracy of the recordings, so I think there's sufficient foundation. |
|---|---|
| [Prosecutor]: | So at this time, Your Honor, we would move to admit. |
| [Court]: | So I will admit that over the objection of the defense. |

The State wished to introduce the audio recording because it contained statements tending to show that it was cold outside and that Derrick was joking with the officers. Derrick argues that the district court did not act consistently with legal standards because the officer's testimony was insufficient to lay a foundation pursuant to I.R.E. 901. Moreover, Derrick asserts the district court failed to exercise reason in its decision because the officer authenticating the exhibit did not set up the recording officer's recording device, was not present for the conversation, and did not overhear the conversation. Derrick also asserts that it was not harmless. The State responds that the authenticating officer's testimony was sufficient to lay a foundation pursuant to Idaho Rule of Evidence 901 and that any error was harmless.

### 1. Abuse of discretion

The decision whether to admit evidence at trial is generally within the province of the trial court. A trial court's determination that evidence is supported by a proper foundation is reviewed for an abuse of discretion. *State v. Gilpin*, 132 Idaho 643, 646, 977 P.2d 905, 908 (Ct. App. 1999). Therefore, a trial court's determination as to the admission of evidence at trial will only be reversed where there has been an abuse of that discretion. *State v. Zimmerman*, 121 Idaho 971, 973-74, 829 P.2d 861, 863-64 (1992). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it, and reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989). For purposes of this case, we will assume arguendo that the district court abused its discretion in admitting the audio recording, as any error was harmless

### 2. Harmless error

Error is not reversible unless it is prejudicial. *State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct. App. 1983). With limited exceptions, even constitutional error is not necessarily prejudicial error. *Id.* Thus, we examine whether the alleged error complained of in

6

the present case was harmless. *See State v. Lopez*, 141 Idaho 575, 578, 114 P.3d 133, 136 (Ct. App. 2005). Where a defendant meets his or her initial burden of showing that a constitutional violation has occurred, the State has the burden of demonstrating to the appellate court beyond a reasonable doubt that the violation did not contribute to the jury's verdict. *Perry*, 150 Idaho at 227-28, 245 P.3d at 979-80. Whether an error in admitting evidence is harmless in a particular case depends upon a host of factors, including whether the evidence was cumulative, the presence or absence of corroborating or contradicting evidence, the importance of the evidence and, of course, the overall strength of the prosecution's case. *State v. Gerardo*, 147 Idaho 22, 27, 205 P.3d 671, 676 (Ct. App. 2009).

In this case, the impeachment evidence from the exhibit--namely that Derrick was joking with the officers and that it was cold outside--was cumulative. This is because the authenticating officer, prior to the audio recording being admitted and played, testified, without objection, that Derrick had asked for a jacket and "seemed to make light of the situation." The officer further testified that he remembered that it was "fairly cold" outside. The officer from the audio recording, who had been called as a witness during the State's case-in-chief, testified that Derrick had been "cracking jokes and just had a very nervous feel to him."

In addition to the impeachment evidence being cumulative, it was also weak and not necessarily contradictory. First, although the evidence did tend to rebut Derrick's testimony that it was hot outside, Derrick had already explained that he asked to get his jacket "because of the nerves." Moreover, he explained that he did not mean that it was "like 100 degrees" outside, but rather that it wasn't "freezing cold" outside. Indeed, leaving the patio door of a small residence full of individuals open on a cool evening after a warm day does not seem far-fetched. The evidence also did not necessarily contradict Derrick's claim that he was nervous. Derrick had previously testified that he was making jokes because that is how he "tried to cope." Some support for Derrick's view even came from the State's own witness. The officer from the audio recording testified, during the State's case-in-chief, that Derrick "seemed very nervous" and "was cracking jokes and just had a very nervous feel to him."

Although the issue of credibility was important in this case, this specific impeachment evidence did not involve crucial facts and was cumulative. In light of the aforementioned factors and the strength of the State's case against Derrick, any error in admitting the audio recording was harmless.

## III.
## CONCLUSION

The prosecutor's misstatement of the law did not constitute fundamental error because it did not sufficiently prejudice Derrick and may have been tactical. Assuming the district court erroneously admitted the audio recording of Derrick joking around with the officer, the error was harmless. Accordingly, we affirm Derrick's judgment of conviction for felony injury to a child.

Chief Judge GRATTON and Judge HUSKEY **CONCUR**.